Lester S. BIPPUS and Betty Jane Bippus

v.

The NORTON COMPANY, Dresser Industries, Inc. and Pneumo Corporation, Cleveland Pneumatic Air Tool Company

v.

REED TOOL COMPANY, Baker Oil Tools of Texas, Inc., Baker Oil Tools, Inc., Baker International Corporation and Burnham Corporation.

Civ. A. No. CA 75–3140.

United States District Court, E. D. Pennsylvania.

Sept. 15, 1977.

Galfand, Berger, Senesky, Lurie & March, Philadelphia, Pa., for plaintiffs.

C. H. Thomas, Jr., Philadelphia, Pa., for Reed Tool Co.

W. J. Timby, Jr., Philadelphia, Pa., for Burnham Corp.

John J. Tinaglia, Philadelphia, Pa., for Bakers.

F. Hastings Griffin, Jr., Philadelphia, Pa., for Norton.

Bennett, Bricklin & Saltzburg, Philadelphia, Pa., for Pneumo Co.

White & Williams, Philadelphia, Pa., for Dresser Industries.

## MEMORANDUM AND ORDER

TROUTMAN, District Judge.

■ In this products liability action plaintiffs are seeking damages for injuries suffered by Lester Bippus when the grinding wheel exploded on the portable air grinder he was operating. Before the Court are motions for summary judgment by defendants, Dresser Industries, Inc. (Dresser) and Norton Company (Norton), and third-party defendants, Reed Tool Company (Reed), Baker Oil Tools of Texas, Inc. (Baker/Texas), Baker Oil Tools, Inc. (Baker Oil) and Baker International Corporation (Baker International). Without discussing the entire tortuous history of corporate transformations with which this case is concerned, several matters are clear. First, as plaintiffs readily agree, Baker/Texas and Baker Oil are no longer in existence. Furthermore, Baker International is a parent corporation to Reed, and Reed is an ongoing, viable enterprise. Therefore, plaintiffs have agreed to discontinue action against Baker/Texas, Baker Oil and Baker International and this Court feels that summary judgment is proper as to them.

■ Second, the summary judgment actions of Reed and Dresser are both concerned with the same key issue: when Dresser purchased the portable pneumatic tool business of G. W. Murphy Industries (Murphy), did Dresser assume responsibility for products liability actions that could have arisen against Murphy for tools manufactured prior to the date of sale? If so, then Dresser is not entitled to summary judgment and Reed is; otherwise, the opposite is true.[1]

■ The key portion of the sales agreement is Section 4.3, which reads in pertinent part as follows:

"* * * (A)nd Dresser shall assume and agree to pay, perform and discharge all liabilities and obligations reflected on

---

1. Plaintiffs contend that both parties should be liable. This, however, is not possible. If the sales agreement did not transfer products liability risk to the purchaser, then Dresser could not be liable. If the agreement did transfer such liability, then Reed is protected and cannot be liable. Liability against both parties is therefore not possible.

the Balance Sheet as of March 23, 1969 attached as Exhibit A, to the extent the same have not been paid as of the Closing Date, together with all recorded liabilities, accrued or incurred by Cleco and Subsidiaries between March 23, 1969 and the Closing Date in the regular and ordinary course of business to be reflected on the Closing Balance Sheet referred to in Paragraph 4.4 and, in addition, those liabilities and obligations under the contracts, agreements, commitments and unaccepted or irrevocable bids or offers listed in Exhibit B to this Agreement (which are acquired by Dresser hereunder) which are not recorded at the date of the Closing Balance Sheet and unrecorded liabilities for services actually rendered or materials or supplies delivered to Cleco or a Subsidiary for the use and benefit of Cleco or the Subsidiaries in connection with expenses incurred in the regular and ordinary course of business between March 23, 1969 and the Closing Date but not invoiced or accruable on May 18, 1969 in an aggregate amount not to exceed Ten Thousand Dollars ($10,000); \* \*".

As to whether such a provision transfers liability from the selling corporation to the purchasing corporation, the law of Pennsylvania provides that there are four circumstances in which such liability is transferred, namely, when:

(1) the purchaser expressly or impliedly agrees to assume such obligations;

(2) the transaction amounts to a consolidation or merger of the selling corporation with or into the purchasing corporation;

(3) the purchasing corporation is merely a continuation of the selling corporation;

(4) the transaction is entered into fraudulently to escape liability for such obligations.

See *Knapp v. North American Rockwell Corporation*, 506 F.2d 361 (3d Cir. 1974). In the *Knapp* case, a sale of assets which required the selling corporation to dissolve "as quickly as possible" was held to transfer liability, in light of social policy considerations with respect to the spreading of burden of the loss.

In the case at bar, the transfer of liability is only possible under the first condition above, namely that Dresser expressly or impliedly assumed liability for products liability obligations. *Bouton v. Litton Industries, Inc.*, 423 F.2d 643 (3d Cir. 1970) involved an agreement of sale.[2] In constru-

---

**2.** (d) Assumption of Liabilities by Litton. Litton will deliver to M–T an undertaking whereby Litton or its wholly-owned subsidiary, as the case may be, assumes and agrees to pay or discharge (i) all liabilities and obligations of M–T as of May 31, 1962, whether accrued, absolute, contingent or otherwise, to the extent, and only to the extent, that the same are reflected or reserved against in the financial statements as supplemented by Schedule C hereinafter referred to in paragraph (b) of Section 3 and have not been paid or discharged prior to the closing; (ii) all liabilities and obligations of M–T arising in the normal and ordinary course of its business between May 31, 1962 and the transfer date, except those referred to in clauses (a), (b) and (c) of following subdivision (iii) of this sentence; (iii) all liabilities and obligations of M–T in respect of the contracts and commitments referred to in paragraph (f) of Section 3, and all other contracts and commitments entered into in the regular and ordinary course of M–T's business at any time before or after May 31, 1962 and prior to the transfer date, except: (a) liabilities or obligations in respect of any contract or commitment of the character described in paragraph (f) of Section 3, but not listed in Schedules G, H, I, J and K; (b) liabilities or obligations in respect of any contract or commitment entered into by or on behalf of M–T between the date of this agreement and the transfer date which are precluded by the provisions of paragraphs (d), (e) and (g) of Section 5 of this Agreement; (c) liabilities or obligations arising out of any breach by M–T, at any time before or after May 31, 1962 and prior to the transfer date, of any contract or commitment, unless and to the extent that such liabilities or obligations are reflected or reserved against in the financial statements of May 31, 1962 or set forth in the Schedules; and (iv) any and all liabilities and obligations set forth in the Schedules to this Agreement. Litton or its subsidiary, as the case may be, shall not assume or be liable for (i) any cost, expense or tax liability of M–T arising from or growing out of the sale and exchange provided for by this Agreement; (ii) obligations or liabilities to M–T's stockholders as such, including any obligation or liability to dissenting stockholders; (iii) any of the debts,

ing the agreement to transfer risk of products liability claims the Court held:

"The only facet of the agreement to which Litton can point with even slight comfort in support of its contention that it did not assume the obligation to insure against or pay the product liability claims is the absence of an express reference in the contract to such arising from future accidents. That absence is not significant. The draftsmen throughout referred to broad categories of liabilities, not to narrow specifics. * * *" *Id.* at 652.

The contract in the instant case is similar. The draftsmen used broad categories, not narrow specifies, so the absence of a reference to products liability is equally insignificant. We find that the agreement in this case is equivalent to that in *Bouton* and that the purchaser in this case assumed responsibility for products liability claims as did the purchaser in *Bouton*. Thus, the motion for summary judgment of Reed will be granted and that of Dresser will be denied.

■ There remains the motion for summary judgment by defendant Norton. Norton contends that plaintiff's injury is not the result of inadequacy of the warnings of the use of the grinding wheel. Whether the warnings are adequate and whether the plaintiff heeded such warnings are fact issues for the finder of fact and are not properly disposed of in a motion for summary judgment. Therefore, Norton's motion for summary judgment will be denied.

liabilities or obligations of M–T (or costs and expenses in connection therewith) to the extent that such debts, liabilities or obligations shall be satisfied or paid on behalf of M–T by an insurer or insurers *against such debt, liability* or obligation under a policy issued to M–T.

The assumption and agreement to pay and perform by Litton or its subsidiary of such debts, liabilities and obligations of M–T shall not preclude Litton or its subsidiary from contesting in *good faith any such debts, liabilities and obligations.*