**Charles T. GRUGAN and Therese A. Grugan**

**v.**

**BBC BROWN BOVERI, INC., Bechtel Corporation, Bechtel Western Power Corporation, and Bechtel, Inc.**

**Civ. A. No. 87–4959.**

United States District Court, E.D. Pennsylvania.

Jan. 24, 1990.

Joseph R. McFadden, Jr., Media, Pa., for plaintiffs.

Richard W. Foltz, Jr., Philadelphia, Pa., for defendants Bechtel Corp., Bechtel Western Power Corp. and Bechtel, Inc.

John J. Barrett, Jr., Philadelphia, Pa., for defendant BBC Brown Boveri, Inc.

## OPINION AND ORDER

VAN ANTWERPEN, District Judge.

### INTRODUCTION

In this diversity matter I have before me a number of motions: the Revised Motion for Summary Judgment of Defendant BBC Brown Boveri, Inc. ("Defendant Brown Boveri"); the Cross–Motion for Partial Summary Judgment of Defendants Bechtel Corporation, Bechtel Western Power Corporation and Bechtel, Inc., (collectively referred to as "Defendant Bechtel"); the Cross–Motion for Partial Summary Judgment of plaintiffs; and Defendant Bechtel's Motion for Leave to File a Third–Party Complaint against a company named Gould, Inc. ("Gould"). I also have memoranda of the parties in support of and in opposition to these Motions and the prior Orders of this Court dated October 4, 1988 and December 8, 1988.

For the reasons given below, Defendant Brown Boveri's Revised Motion for Summary Judgment, will be denied, plaintiffs' and Defendant Bechtel's Cross–Motions for Partial Summary Judgment will be granted and Defendant Bechtel's Motion for Leave to File a Third–Party Complaint against Gould, will also be granted.

### FACTS

On July 9, 1985, plaintiff Charles T. Grugan was employed as a maintenance helper with the Philadelphia Electric Company at its Peach Bottom Atomic Power Station. While working on electrical equipment inside a circuit breaker cabinet, he was injured when he came into contact with an electrically energized part of the mechanism.

In November, 1970, a company named ITE Imperial Corporation ("ITE Imperial") manufactured the transformer and associated switchgear, including the circuit breaker cabinet, involved in this action. Defendant Bechtel, as builder of the power station, installed the circuit breaker cabinet. The manufacture of the circuit break-

er cabinet was followed by a series of business transactions involving ITE Imperial and its electrical switchgear business. The following is a brief outline of those transactions.

In 1976, Gould acquired ITE Imperial as a wholly owned subsidiary of Gould, but nevertheless, still maintained ITE Imperial's separate corporate existence. On January 31, 1979, as part of a complex international transaction, Gould and BBC Brown Boveri & Company Limited, a Swiss corporation with worldwide interests ("Swiss Brown Boveri"), established a joint venture whereby, *inter alia*, a partnership ("Partnership") was formed through Gould's subsidiary, ITE Imperial, and Swiss Brown Boveri's subsidiary, Brown Boveri Power Delivery, Inc. ("Partner Brown Boveri"). Gould's subsidiary, ITE Imperial, and Swiss Brown Boveri's subsidiary, Partner Brown Boveri, each owned 50% of the Partnership and the purpose of the Partnership was to conduct the business of Gould's Electrical Systems Group[1] in the United States. Those operations assumed by the Partnership were a portion of the operations of ITE Imperial, as well as that of other Gould subsidiaries, and constituted all of Gould's Electrical Systems Group's business in the United States.

Pursuant to a Stockholders' Agreement between ITE Industries Limited, a wholly owned Canadian subsidiary of Gould and Castor Investments Limited, a wholly owned subsidiary of Swiss Brown Boveri ("1979 Stockholders' Agreement") another corporation, Gould–Brown Boveri, Inc. ("Canadian Venture") was formed in Canada to conduct the business of Gould's Electrical Systems Group in Canada and Australia. Each of the Stockholders owned 50% of the stock of the Canadian Venture.

Taken together, the Partnership and the Canadian Venture conducted all of the business of Gould's former Electrical Systems Group.

On December 18, 1980, Gould sold its 50% interest in the Partnership to Swiss Brown Boveri, and in connection with this ITE Imperial conveyed its interest as a general partner in the Partnership (except for Naval business) to Defendant Brown Boveri.

On December 31, 1981, ITE Imperial ceased to be a subsidiary and was merged into Gould. Gould assumed all remaining obligations and liabilities of ITE Imperial. Gould remains an active Delaware corporation.

## PROCEDURAL HISTORY

Plaintiffs filed this action in 1987 against Defendant Brown Boveri alleging both strict liability and negligence and against Defendant Bechtel alleging negligence. Defendant Bechtel cross-claimed against Defendant Brown Boveri for contribution or indemnification, or both.

On October 14, 1988, Defendant Brown Boveri filed a Motion for Summary Judgment, alleging that it was not the successor to the liability of ITE Imperial with respect to the circuit breaker cabinet. This Motion was opposed by plaintiffs. On December 8, 1988, I denied the motion, saying, *inter alia:*

> "These facts at minimum create a material issue of fact whether [Defendant Brown Boveri] contractually assumed responsibility for plaintiff's alleged injuries. We may not ultimately resolve this issue or the other issues presented without a more fully developed record."

Defendant Brown Boveri filed its Revised Motion for Summary Judgment on September 25, 1989. This Motion was opposed by plaintiffs and Defendant Bechtel.

In its Response to the Revised Motion for Summary Judgment, Defendant Bechtel made a Cross–Motion for Partial Summary Judgement, asking that Defendant Brown Boveri be deemed the successor of ITE Imperial for the purposes of this action. Plaintiffs subsequently made a similar Cross–Motion. Both Cross–Motions are opposed by Defendant Brown Boveri.

At the same time that it filed its Cross–Motion for Summary Judgment, Defendant Bechtel filed a Motion for Leave to File a

---

**1.** The Electrical Systems Group is more fully described later in this Opinion.

Third–Party Complaint against Gould. This Motion is opposed by Defendant Brown Boveri.

## DISCUSSION

### 1. OVERVIEW

In its Revised Motion for Summary Judgment, Defendant Brown Boveri alleged that its Motion was ripe because of the close of discovery and a more fully developed record. We indicated in our December 8, 1988 Memorandum and Order that a more fully developed record was necessary. Nevertheless, in spite of the ten month period from December 1988 to September 1989, the only material addition to the record supporting the Revised Motion, as compared with the record supporting the original Motion for Summary Judgment, is the Affidavit of Michael C. Veysey, Vice President and General Counsel of Gould. As is discussed below, that Affidavit is not persuasive. In fact, the principal difference in the posture of this case between the time the Defendant Brown Boveri's original Motion for Summary Judgment was denied and the present is the clarification of the issue of explicit assumption of liability found in the several memoranda submitted by plaintiffs and Defendant Bechtel in opposition to Defendant Brown Boveri's Revised Motion for Summary Judgment and in support of their Cross–Motions for Partial Summary Judgment. Those memoranda focus on the crucial parts of the documents already in the record and make possible an understanding of the corporate transactions here involved.

### 2. STANDARD FOR SUMMARY JUDGMENT

Fed.R.Civ.P. 56(c) instructs a court to enter summary judgment when the record reveals that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." This Rule provides the court with a useful tool when the critical facts are undisputed, facilitating the resolution of a pending controversy without the expense and delay of conducting a trial. *Peterson v. Lehigh Valley Dist. Council,* 676 F.2d 81, 84 (3rd Cir.1982); *Goodman v. Mead Johnson & Co.,* 534 F.2d 566, 573 (3rd Cir.1976), *cert. denied,* 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). Summary judgment is inappropriate, however, where the evidence before the court reveals a genuine factual disagreement requiring submission to a jury. An issue is "genuine" only if the evidence is such that a reasonable jury could find for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* 477 U.S. at 249, 106 S.Ct. at 2511. However, if the evidence is merely "colorable" or is "not significantly probative", summary judgment may be granted. *Id.*

In a summary judgment action, the moving party bears the initial burden of identifying for the court those portions of the record which it believes demonstrate the absence of a material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Following such a showing in a case where the non-moving party is the plaintiff and therefore bears the burden of proof, it must by affidavit or by the depositions and admissions on file "make a showing sufficient to establish the existence of [every] element essential to that party's case." *Id.* 477 U.S. at 322, 106 S.Ct. at 2552; *Anderson, supra,* 477 U.S. at 256, 106 S.Ct. at 2514; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); Fed.R.Civ.P. 56(e). In making its ruling on a summary judgment motion, the court must view all inferences in a light most favorable to the non-moving party, *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Continental Ins. Co. v. Bodie,* 682 F.2d 436, 438 (3rd Cir.1982) must resolve all doubts against the moving party, *Gans v. Mundy,* 762 F.2d 338, 341 (3rd Cir.1985), *cert. denied,* 474 U.S. 1010, 106 S.Ct. 537, 88 L.Ed.2d 467 (1985), and must

take as true all allegations of the non-moving party that conflict with those of the movant, *Anderson, supra,* 477 U.S. at 255, 106 S.Ct. at 2513.

### 3. CRITERIA FOR ASSUMPTION OF SUCCESSOR LIABILITY

Under Pennsylvania law[2], when one company sells or transfers all of its assets to another company, the latter is not liable for the debts and obligations of the transferror unless:

> (1) the purchaser expressly or impliedly agrees to assume such obligation; (2) the transaction amounts to a consolidation or merger; (3) the purchasing corporation is merely a continuation of the selling corporation; or (4) the transaction is fraudulently entered into to escape liability.

*Whitmore v. Bobst Group, Inc.,* 668 F.Supp. 421, 424 (E.D.Pa.1987). *See also, Philadelphia Electric Co. v. Hercules, Inc.,* 762 F.2d 303, 308 (3rd Cir.1985), *cert. denied,* 474 U.S. 980, 106 S.Ct. 384, 88 L.Ed.2d 337 (1986). In addition, under Pennsylvania law, a defendant can have successor liability under the "product line" exception:

> [W]here one corporation acquires all or substantially all the manufacturing assets of another corporation, even if exclusively for cash, and undertakes essentially the same manufacturing operation as the selling corporation, the purchasing corporation is strictly liable for injuries caused by defects in units of the same product line, even if previously manufactured and distributed by the selling corporation or its predecessor.

*Dawejko v. Jorgensen Steel Co.,* 290 Pa. Super. 15, 23, 434 A.2d 106, 110–11 (1981), citing *Ramirez v. Amsted Industries, Inc.,* 86 N.J. 332, 358, 431 A.2d 811, 825 (1981). Commenting on *Dawejko,* the Third Circuit Court of Appeals has said:

> The Pennsylvania Supreme Court has not spoken on the issue of the product line

exception set out in *Dawejko,* and thus we have no definitive Pennsylvania authority delineating the contours of this doctrine. We are uncertain whether the Pennsylvania Supreme Court would adopt the product line exception in any form.

\*   \*   \*   \*   \*   \*

> For purposes of our decision, we will assume *arguendo* that Pennsylvania would follow the *Dawejko* decision. We predict, however, that it would not apply such an exception in cases where the claimant had a potential remedy against the original manufacturer, but failed to exercise all available means to assert his or her claim.

*Conway v. White Trucks, a Div. of White Motor Corp.,* 885 F.2d 90, 94–95 (3rd Cir. 1989).

A number of arguments have been advanced in the many briefs filed on this issue. The "product line" theory has been particularly fully briefed.

■ We seriously doubt whether the product line exception would apply in this case, even though the record clearly shows that Defendant Brown Boveri acquired all of Gould's Electrical Systems Group in the United States, because of Gould's continued corporate vitality. However it is unnecessary to decide that issue because we find that there is explicit assumption by the Partnership of the liability of ITE Imperial arising out of its manufacture of the circuit breaker cabinet, and through the Partnership by Defendant Brown Boveri. This explicit assumption is found in the detailed documentation of the corporate transactions involving ITE Imperial's electrical switchgear business since it manufactured the circuit breaker cabinet in 1970. These documents are found as exhibits F and G to plaintiffs' Memorandum in Opposition to Defendant Brown Boveri's original Motion for Summary Judgment. The parties have

---

**2.** We have jurisdiction in this matter under 28 U.S.C. § 1332 because the parties are of diverse citizenship and the amount in controversy exceeds $10,000, which was the jurisdictional threshold when suit was brought. When federal courts sit in diversity cases, they must apply the substantive law of the forum state. *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The parties have agreed that we should apply Pennsylvania law to the issues raised in this matter.

elected to stand on essentially the factual record before the court on the original Motion for Summary Judgment.[3]

### 4. DESCRIPTION OF ASSUMPTION TRANSACTIONS

The first transaction was the acquisition of ITE Imperial by Gould as a wholly owned subsidiary in 1976. In this transaction ITE Imperial retained its separate corporate existence, and both the line of business and liability remained in ITE Imperial.

The next transaction was the conveyance to the Partnership of all of Gould's Electrical Systems Group operations in the United States, including the portion of the business of ITE Imperial connected with the manufacture of the circuit breaker cabinet. This was accomplished by a Parents Agreement dated January 31, 1979 between Gould and Swiss Brown Boveri ("1979 Parents Agreement") and a Partnership Agreement dated January 31, 1979 between Gould's subsidiary, ITE Imperial, and Swiss Brown Boveri's subsidiary, Partner Brown Boveri ("1979 Partnership Agreement"). Under these agreements the Partnership assumed certain liabilities of Gould's Electrical Systems Group.[4]

Section 2.5 of the 1979 Parents Agreement provides:

> 2.5 On the Closing Date, the Parents shall cause the Partnership to assume and hold Gould and its Subsidiaries harmless against the Partnership Liabilities and the Canadian Venture to hold Gould and its Subsidiaries harmless against the Canadian Venture Liabilities.

Pursuant to Section 3.1(b) of the 1979 Partnership Agreement:

> (b) On the Effective Date the Partnership shall, and by the execution of this Agreement by the Partners the Partnership hereby does, assume the Partnership Liabilities and agree to indemnify and hold Gould and its Subsidiaries harmless against all claims, damages, costs, expenses, losses and liabilities arising therefrom ...

The Partnership Liabilities assumed under the 1979 Partnership Agreement ("Partnership Liabilities") are defined in Part C, paragraph 6 of Schedule 1 to that agreement, to include, *inter alia:*

> 6. All other liabilities and obligations of Gould and its Subsidiaries, whether existing on the Effective Date or thereafter arising, contingent or otherwise, arising from or related to the business of [Electrical Systems Group]....

In the next transaction the business of the Partnership (except for naval business) was conveyed to a new corporation, Defendant Brown Boveri, pursuant to a December 18, 1980 Agreement of Purchase and Sale among Swiss Brown Boveri, Partner Brown Boveri, Gould, ITE Imperial, and the Partnership. ("1980 Purchase Agreement"). Defendant Brown Boveri, a wholly owned subsidiary of Swiss Brown Boveri, was incorporated in Delaware on November 10, 1980 as Brown Boveri Electric, Inc., and renamed BBC Brown Boveri, Inc. on December 30, 1983. In the 1980 Purchase Agreement, Defendant Brown Boveri is called "Newco".

The assumption of the liabilities of the Partnership by Defendant Brown Boveri in this transaction is governed by Section

---

3. As will be seen from the portions of the Affidavit of Michael C. Veysey, Vice President and General Counsel, quoted and discussed later in this Opinion, that Affidavit adds nothing significant to the factual record.

4. The Electrical Systems Group is described in Exhibit A to the 1979 Parents Agreement, as follows:

> The Electrical Systems Group (ESG) of Gould, Inc. (Gould) is an operating group of Gould organized on a product line basis. It designs, manufactures and markets electrical switching and protection equipment for electric utilities,

industrial plants, commercial and public buildings, offshore platforms and naval vessels.

From a corporate standpoint, ESG consists of a part of [ITE Imperial] (a Gould subsidiary incorporated under the laws of Delaware), a part of I-T-E Industries Limited (a Gould subsidiary incorporated under the laws of Canada) and all of two subsidiaries of the latter corporation, Canadian Porcelain Limited and I-T-E Industries Australia Proprietary Limited. The two corporations first mentioned have ESG facilities and personnel but they also have facilities, assets and personnel of other Gould operating groups ...

2.1.3 of the 1980 Purchase Agreement which provides:

> 2.1.3 *Transfer to [Defendant Brown Boveri]* [The Partnership will:] Transfer, convey and assign to [Defendant Brown Boveri], ... all of the Partnership's properties and business, ... in exchange for 1,000 shares of Common Stock ... [of Defendant Brown Boveri] ... and the assumption by [Defendant Brown Boveri] of all of the liabilities and obligations of the Partnership ...

Included in the liabilities of the Partnership conveyed under this provision would be the Partnership Liabilities, which, as we have seen, would include liabilities of Gould or ITE Imperial.

We note in passing that in addition to the assumption by *Defendant* Brown Boveri of the liabilities of the Partnership pursuant to Section 2.1.3, there is a provision in the 1980 Purchase Agreement that *Partner* Brown Boveri, in return for the conveyance of ITE Imperial's 50% share of the Partnership, should, first, pursuant to Section 3.2.-1(a), pay $24,000,000.00, and second, pursuant to Section 3.2.1(b):

> (b) subject to the provisions of Section 11 hereof, assume and agree to pay, perform, defend and discharge if and when due, to the extent not paid, performed or discharged prior to the Closing Date, all of [ITE Imperial's] liabilities and obligations as a general partner of the
>
> Partnership ... exclusive of any liabilities based upon [ITE Imperial's] status as a corporation, although arising from its interest in the Partnership (e.g., liabilities under tax laws applicable to corporations and under state laws applicable to foreign corporations).

By this provision, Partner Brown Boveri, not a party to this action, assumed partner ITE Imperial's share of the liabilities of the Partnership, including the "Partnership Liabilities" assumed under the 1979 Partnership Agreement, to the extent that such liabilities would be chargeable to a general partner pursuant to the General Partnership Act of the State of New York, under which the Partnership was formed. While this provision does not directly indicate

which liabilities were assumed by *Defendant* Brown Boveri, it does demonstrate an intention on the part of the Brown Boveri organization to assume the general liabilities of the Partnership.

In Section 11.1 of the 1980 Purchase Agreement, Gould agrees to indemnify Swiss Brown Boveri, Partner Brown Boveri, the Partnership, and Defendant Brown Boveri:

> ... against and in respect of the following, *provided* that neither [Swiss Brown Boveri, Partner Brown Boveri, the Partnership or Defendant Brown Boveri] shall have any claim hereunder in respect of any Item ... unless the Damages ... sustained by them in respect of any such Item shall exceed $100,000 and unless any such claim with respect to such Item ... is asserted by written notice to Gould within six years after the Closing Date ...
>
> 11.1.3 Fifty percent of the Damages for ...
>
> (iii) other liabilities of the Partnership ... which (x) originated, were incurred or were assumed by the Partnership (*except under the 1979 Agreements which shall control the indemnification obligation of the parties hereto with respect thereto*) prior to the Closing Date, and (y) are not listed in Exhibit J hereto or were incurred subsequent to September 30, 1980 otherwise than in the ordinary course of business of the Partnership; ... (emphasis supplied).

Since the Partnership Liabilities were assumed by the Partnership under the 1979 Partnership Agreement, the provisions of that agreement, namely Section 3.1(b), *supra*, would apply, and Gould would not be liable to indemnify Swiss Brown Boveri, Partner Brown Boveri, the Partnership or Defendant Brown Boveri for liability arising out of the Partnership Liabilities. We also note that plaintiffs' claim was apparently not asserted against Gould within the six year period of limitations prescribed in Section 11.1.

## 5. THE VEYSEY AFFIDAVIT

As noted above, all of the documents discussed above were in the record when

we denied Defendant Brown Boveri's original Motion for Summary Judgment. The only material addition to the record since that time, and the document on which Defendant Brown Boveri depends to justify it Revised Motion for Summary Judgment, is the Affidavit of Michael Veysey, Vice President and General Counsel of Gould. For the reasons given below I do not find Mr. Veysey's affidavit sufficiently probative to rebut the clear language of documents in the record. When considered that the Affidavit is that of the General Counsel of one of the principals to the agreements in question, it is inexplicably superficial and fails to deal in any adequate way with clearly crucial sections of the documents. The relevant part of his two and one-half page affidavit, with our comments, reads as follows:

> 4. On January 31, 1979 Gould and [Swiss Brown Boveri] established a joint venture whereby a partnership was formed through their respective subsidiaries ITE Imperial and [Partner Brown Boveri].

COMMENT: This factual statement is supported by the record.

> 5. The purpose of the joint venture was to conduct the business of Gould's high-voltage electrical products division (which comprised a limited portion of the Gould Electrical Systems Group), under the name of Gould–Brown Boveri. Each Partner owned a 50% interest in the joint venture. The business of [the Partnership] was conducted under the direction of a joint management committee.

COMMENT: This paragraph states that the partnership assumed "a limited portion of the Gould Electrical Systems Group" This assertion is incorrect when considered in the light of the definitions section of the 1979 Parents Agreement and Exhibit A thereto, which define the Electrical Systems Group and Section 2.2 of the 1979 Partnership Agreement, under which the Partnership assumed all of the operations of Gould's Electrical Systems Group in the United States, with the balance of the Electrical Systems Group's operations going to the Canadian Venture under Section 2.2 of the 1979 Stockholders Agreement. This

paragraph also fails to mention, much less explain, Section 2.5 of the 1979 Parents Agreement, Section 3.1(b) of the 1979 Partnership Agreement and the definition of Partnership Liabilities in Schedule 1 thereto under which the Partnership assumed the Partnership Liabilities. Those sections and that definition are crucial to determination of whether successor liability arising from the manufacture of the circuit breaker cabinet was assumed by the Partnership.

> 6. On December 18, 1980, Gould sold its 50% interest in the partnership to [Swiss Brown Boveri] pursuant to [the 1980 Purchase Agreement].

COMMENT: This factual statement is supported by the record.

> 7. Prior to the closing date of such sale, ITE Imperial and [Partner Brown Boveri] organized [Defendant Brown Boveri].

COMMENT: This factual statement is supported by the record.

> 8. All liabilities and obligations of ITE Imperial which arose from the operation of ITE Imperial as a corporation or as a wholly-owned subsidiary of Gould—as distinct from one of the partners in the joint venture—remained with ITE Imperial or Gould, as outlined in Section 3.2.1 of the [Purchase Agreement], and were not assumed by [Defendant Brown Boveri] or by [Swiss Brown Boveri] when Gould's 50% in the partnership was purchased by [Swiss Brown Boveri].

COMMENT: This statement is supported by the record except to the extent that it implies that liability arising from the manufacture of the circuit breaker cabinet was not assumed by Defendant Brown Boveri. Leaving aside the question of which liabilities of the Partnership could be imputed to ITE Imperial as a general partner, the reference to Section 3.2.1 of the 1980 Purchase Agreement is inapposite. Section 3.2.1 governs liabilities of ITE Imperial assumed by *Partner* Brown Boveri. The question before us is which of the liabilities of the Partnership were assumed by *Defendant* Brown Boveri, and that is governed by Section 2.1.3 of the 1980 Purchase Agreement.

9. Only that portion of the liabilities and obligations of [the Partnership] which arose from the operation of the joint venture, including liabilities and obligations arising from products manufactured during the tenure of the joint venture from January 31, 1979 to December 18, 1980, were shared by Gould and [Swiss Brown Boveri], as outlined in Section 3.2.1 of the [1980 Purchase Agreement].

COMMENT: This is a legal conclusion which simply cannot be supported by the record and which is seriously misleading. To begin with, Section 3.2.1 of the 1980 Purchase Agreement does not deal with obligations *shared* by Gould and *Swiss* Brown Boveri but with obligations of ITE Imperial *assumed* by *Partner* Brown Boveri. In addition it implies that the only obligations assumed by Swiss Brown Boveri or its subsidiaries were those in connection with products manufactured by the Partnership, ignoring totally the assumption by the Partnership of the Partnership Liabilities pursuant to Section 3.1(b) of the 1979 Partnership Agreement, and the assumption of the liabilities and obligations of the Partnership by *Defendant* Brown Boveri pursuant to Section 2.1.3 of the 1980 Purchase Agreement.

10. On December 31, 1981, ITE Imperial merged into Gould and Gould assumed all of the obligations and liabilities of ITE Imperial ...

COMMENT: This statement is supported by the record to the extent that it speaks of obligations of ITE Imperial as of December 31, 1981.

11. All liabilities and obligations arising under law from the manufacture of any products by ITE Imperial prior to the formation of the joint venture are and remain the responsibility of Gould and not [Swiss Brown Boveri].

COMMENT: For reasons discussed above, this conclusion of law is totally unsupported by the record.

12. Gould has continuously remained a viable corporation ...

COMMENT: This factual statement is supported by the record.

6. ANALYSIS OF ASSUMPTION TRANSACTIONS

The chain of successor liability from ITE Imperial to Defendant Brown Boveri involves three transactions, the first being the purchase of ITE Imperial by Gould in 1976, the second being the formation of the partnership in 1979 and the third being the conveyance of the Partnership to Defendant Brown Boveri in 1980. These conveyances must be tested against the law to determine whether they meet the criteria for granting four motions before the court, namely, Defendant Brown Boveri's Revised Motion for Summary Judgment, the Cross–Motions for Partial Summary Judgment of plaintiffs and Defendant Bechtel and the motion for Leave to file a Third Party Compliant of Defendant Bechtel.

The issue with regard to Defendant Brown Boveri's Revised Motion for Summary Judgment is whether, on the one hand, the record discloses that Defendant Brown Boveri's succession to ITE Imperial's liability regarding the circuit breaker cabinet is either conclusively proven or is questionable. In either case, summary judgment cannot be granted in favor of Defendant Brown Boveri. On the other hand, if the record shows conclusively that Defendant Brown Boveri cannot be the successor to ITE Imperial's liability, summary judgment must be granted in favor of Defendant Brown Boveri.

The issue in the Cross–Motions for Partial Summary Judgment is whether the record conclusively shows that successor liability was assumed by Defendant Brown Boveri through the Partnership. If so, the Cross–Motions must be granted. If there is any substantial doubt, they must not be granted.

There are two issues on the Motion for Leave to File a Third–Party Complaint. On issue, that of timeliness, will be discussed later. The more fundamental issue, and the one related to the documentation, is whether there is any theory under which Gould could be found to have liability growing out of the manufacture of the circuit breaker cabinet.

The first transaction, the purchase of ITE Imperial by Gould in 1976 is straightforward. ITE Imperial retained is separate corporate existence and therefore existing liability. There is no documentation in the record showing how or when the Electrical Systems Group was formed. Defendant Brown Boveri has questioned whether contingent future liabilities of ITE Imperial were carried into the "business of [the Electrical Systems Group" within the meaning of Partnership Liabilities found in Schedule 1 to the 1979 Partnership Agreement. I will discuss that issue in connection with the discussion of the 1979 Partnership Agreement, in the next transaction.

The next transaction was the formation of the Partnership in 1979, pursuant to the 1979 Parents Agreement and the 1979 Partnership Agreement. Section 2.5 of the 1979 Parents Agreement and Section 3.1(b) of the 1979 Partnership Agreement speak in the broadest possible terms of the assumption by the Partnership of the Partnership Liabilities. Therefore the issue revolves around the definition of "Partnership liabilities" in Schedule 1 to the 1979 Partnership Agreement. This language, which has been quoted above, is as follows:

> 6. All other liabilities and obligations of Gould and its Subsidiaries, whether existing on the Effective Date or thereafter arising, contingent or otherwise, arising from or related to the business of [Electrical Systems Group]

This is broad language, clearly broad enough to convey to the Partnership a liability such as the one in this case arising out of the manufacture of products by the Electric Systems Group portion of the business of Gould (or ITE Imperial) prior to the formation of the Partnership. I note particularly the language "of Gould *and its Subsidiaries*", "whether existing on the Effective Date *or thereafter arising*", and "contingent or otherwise".

The language of the 1979 Partnership Agreement was drafted for a very large transaction between two major corporate families. In cannot be characterized as "boilerplate" or a "contract of adhesion". There is in Part C of Schedule 1 a detailed description of certain classes of liability and numerous limitations. If they had wanted to, the parties could have used language which limited the assumption of contingent tort liability. They chose not to do so in the 1979 Partnership Agreement. We will examine the language in the light of Pennsylvania case law.

In *Philadelphia Elec. Co. v. Hercules Inc.*, 587 F.Supp. 144 (E.D.Pa.1984), reversed on other grounds 762 F.2d 303 (3rd Cir.1985), the Court said:

> A buyer of assets can avoid the implied assumption of liability by enumerating liabilities assumed and explicitly excluding the assumption of liabilities not enumerated. [citations omitted] In the instant contract however, Hercules broadly assumed all of PICCO's liabilities with certain limited exceptions. Therefore, unless one of the exceptions apply [sic.] Hercules can be held to have assumed the liability at issue.

*Philadelphia Electric, supra,* 587 F.Supp. at 148–149. In that case, the language under which defendant Hercules was purported to have assumed the liability in question was as follows:

> [t]he assumption by Hercules of all of the debts, obligations and liabilities of PICCO as of the closing date ...

In sustaining the trial court's finding, as a matter of law that defendant Hercules had assumed the liability, the Third Circuit said:

> As the district court noted, under this language Hercules broadly assumed *all* liabilities incurred by Picco as of the closing date, subject to a few limited exceptions. In such cases, it is of no consequence that the specific liability at issue is not enumerated. *See Bouton v. Litton Industries,* 423 F.2d 643 (3d Cir. 1970); *Bippus v. Norton Company,* 437 F.Supp. 104 (E.D.Pa.1977). Unless this liability comes within one of the express exceptions, Hercules may be held to have assumed it.

*Philadelphia Elec. Co., supra,* 762 F.2d at 303 (3rd Cir.1985).

After dealing with the interpretation of the language by which liability was assumed, the trial court went on to distin-

guish *Husak v. Berkel, Incorporated,* 234 Pa.Super. 452, 341 A.2d 174 (1975) as follows:

> Likewise, Hercules' reliance on *Husak v. Berkel, Incorporated,* 234 Pa.Super. 452, 341 A.2d 174 (1975), is misplaced. In *Husak* the plaintiff brought suit against Berkel seeking damages for personal injuries he sustained from a defective food grinding machine which plaintiff alleged Berkel's predecessor company had manufactured. Berkel, in turn joined SCM as an additional defendant claiming that SCM not Berkel had succeeded to the liabilities of the manufacturer of the defective food grinding machine. 341 A.2d at 176. SCM moved for summary judgment on the basis of corporate successor liability. The facts which were established with respect to this issue demonstrated that SCM was indeed the successor to the manufacturer of the defective machine. *Id.* Nonetheless, SCM argued that Berkel's predecessor had assumed the liability for the injury when it purchased the assets and liabilities of the division of the company which had manufactured the defective machine. On the basis of these facts the lower court granted SCM's summary judgment motion. On appeal, the Superior Court of Pennsylvania determined that although SCM would ordinarily be held liable on these claims as the successor of the company which manufactured the machine the question was whether, in light of the contract clause, Berkel's predecessor had assumed the liability for the instant injury. *Id.* 341 A.2d at 177. In reversing the trial court's award of summary judgment, the court found that the disputed contractual clause lacked sufficient precision to meet the standards required to relieve SCM, as a matter of law, from liability for negligence or strict liability in connection with the production of a defective machine manufactured by its predecessor.
>
> In both *Neville [Chemical Co. v. Union Carbide Corp.,* 422 F.2d 1205 (3d Cir.1970) ] and *Husak* the court strictly construed a contract where one party to the contract sought to insulate itself from liability for its own negligent acts. This is not the situation before the court today, however, and therefore neither of these cases is controlling here. Thus the only question is whether one of the exceptions to Hercules' broad assumption of liability applies.

*Philadelphia Elec. Co., supra,* 587 F.Supp. at 149–150. In *Husak* the transferee of liability was also a defendant, but there was no appealable issue in that regard at the time the case was heard by the Superior Court. Unlike *Husak, supra,* where the *transferror* of liability was attempting to escape liability, in *Philadelphia Elec., supra,* and in the instant case, the purported *transferee* of liability is attempting to escape liability on the ground that a broadly drafted transfer of liability and indemnification clause did not transfer the liability in question.

*See, also, Bouton v. Litton Industries, Inc.,* 423 F.2d 643 (3rd Cir.1970):

> The progression in Section 1(d) is from liquidated financial statement liabilities ... and finally to liabilities "in respect of ... all other contracts and commitments entered into in the regular course of M–T's business."
>
> This progression is appropriate for the assumption of the ongoing obligations of a going business and the language "in respect of ... all other contracts and commitments" could hardly have been broader ... Clearly the parties envisioned that the risk of insuring against future accidents was one which was assumed by the party carrying on the transferred business.

*Bouton, supra,* 423 F.2d at 652.

*See, also Bippus v. Norton Co.,* 437 F.Supp. 104 (E.D.Pa.1977), where the Court said:

> The contract in the instant case is similar. The draftsmen used broad categories, not narrow specifics, so the absence of a reference to products liability is equally insignificant. We find that the agreement in this case is equivalent to that in *Bouton,* and that the purchases in this case assumed responsibility for prod-

uct liability claims as did the purchaser in *Bouton*

*Bippus, supra,* 437 F.Supp. at 107.

I find that, in the light of the nature of the 1976 acquisition of ITE Imperial by Gould and the definition of Electrical Systems Group found in Exhibit A to the 1979 Parents Agreement that ITE Imperial's contingent liabilities for goods manufactured before 1976 was carried into the business of Gould's Electrical Systems Group by that acquisition. I further find that the only reasonable legal interpretation of the above quoted part of the 1979 Parents Agreement and the 1979 Partnership Agreement in the light of these cases is that the Partnership assumed from ITE Imperial successor liability arising out of the manufacture of the circuit breaker cabinet.

The next, and so far as the record discloses, the final transaction relevant to this action was the conveyance of the Partnership to Defendant Brown Boveri as part of the transaction in which Gould sold its 50% interest in the Partnership to Swiss Brown Boveri. The crucial language is found in Section 2.1.3 of the 1980 Purchase Agreement: "and the assumption by [Defendant Brown Boveri] of all of the liabilities and obligations of the Partnership." Following from my previous finding that the Partnership had assumed the liability of ITE Imperial arising out of the manufacture of the circuit breaker cabinet, I find that the documentation on record conclusively establishes that Defendant Brown Boveri assumed liability for the circuit breaker cabinet.

## 7. CONCLUSION

Based on the foregoing determination that the record conclusively supports the proposition that the Partnership and Defendant Brown Boveri assumed successor liability for claims arising out of the manufacture of the circuit breaker cabinet, we see no reason to change the position which we took in our Order of December 8, 1988 denying Defendant Brown Boveri's original Motion for Summary Judgment.

With regard to plaintiffs' and Defendant Bechtel's Cross–Motions for Partial Summary Judgment, Plaintiffs and Defendant Bechtel having carried the burden of demonstrating through the relevant documents that Defendant Brown Boveri is a successor to the liability of ITE Imperial arising out of the manufacture of the circuit breaker cabinet, the Cross–Motions will be granted to the extent that we will find that Defendant Brown Boveri is *a* successor to the liability of ITE Imperial with regard to the manufacture of the circuit breaker cabinet.

We are not, however, convinced at this point, in the light of *Husak, supra,* that the language of Section 3.1(b) of the 1979 Partnership Agreement and of Section 2.1.3 of the 1980 Purchase Agreement extinguishes all liability on the part of Gould. This is particularly true in the light of Gould's volunteering of liability in the Affidavit of its General Counsel.

As the Superior Court of Pennsylvania said in *Husak:*

The application of these rules of construction to the contract upon which SCM wishes to predicate its release from liability would be sufficient to find that the motion for summary judgment was erroneously granted. However, there is an additional reason for refusing this relief. The contract under consideration was between the two defendants to the plaintiff's cause of action. Any contract between the successor to Enterprise's liability and another party cannot affect that successor's original liability to the plaintiff. "The cause of action owned by the plaintiff is distinct from the cause of action arising out of the duty of the additional defendant to indemnify the defendant. Goodrich–Amram Rules of Civil Procedure, Comments on Rule 2252(a)–9." *Carlin v. Pennsylvania Power & Light Co.,* 363 Pa. 543, 545, 70 A.2d 349, 351 (1950).

It is basic contract law that an initially obligated party cannot delegate his responsibility by agreement with a third person. "Neither the delegation of performance by an obligor, nor a contract with the obligor by the person to whom the performance is delegated to assume

the obligor's duty, extinguishes it or prevents recovery of damages from him if the duty is not performed." Restatement of Contracts, § 160(4) (1932). *Cf. Saxe v. Feinstein,* 366 Pa. 473, 77 A.2d 419 (1951); *Beach v. Morris,* 12 S. & R. 16 (Pa.1824); 3 S. Williston, A Treatise on the Law of Contracts § 411 (3d ed. 1960). A party with an original obligation to another cannot divest himself of liability to that party merely by contracting with a third party to assume that liability. [See note 3]

Similarly, in torts, although a person or organization can indemnify itself by agreement with another party against damages arising from its actions, it still remains liable to the injured person. The plaintiff's action is considered apart from the agreement between the transferror and the transferee of liability. See *Carlin v. Pennsylvania Power and Light Co., supra,* W. Prosser, Law of Torts 542, 544 (1971)

[Note 3] See also, Restatement of Contracts, § 141(1) (1932), which reads as follows: "A creditor beneficiary who has an enforceable claim against the promisee can get judgment against either the promisee or the promisor or against each of them on their respective duties to him."

*Husak, supra,* 234 Pa.Superior Ct. at 462, 341 A.2d at 179 (1975). Therefore we will not, at this time, find that Defendant Brown Boveri is the *sole* successor to ITE Imperial's liability in this matter.[5]

▆ Defendant Bechtel's Motion for Leave to File a Third–Party Complaint against Gould was precipitated by the filing of Defendant Brown Boveri's Revised Motion for Summary Judgment. Defendant Brown Boveri opposes the Motion on the ground that it is untimely and would be prejudicial. We have already determined that the documents in the record can be conclusively interpreted as an assumption of successor liability arising out of the manufacture of the circuit breaker cabinet by the Partnership and through it by Defendant Brown Boveri. We have also determined that such liability cannot be conclusively interpreted to have extinguished liability in Gould. This finding provides a basis for adding Gould as an additional defendant or third-party defendant. We will now address the issue of untimeliness raised by Defendant Brown Boveri as an objection to adding Gould as a third-party defendant.

On October 4, 1988, we entered an Order which provided, *inter alia:*

"2. All discovery in this case shall be completed within 90 days after any decision on a motion for summary judgment of [Defendant Brown Boveri] or any motion later filed to join an alleged successor to [ITE Imperial], which joinder motion is filed within 20 days of the decision on the motion for summary judgment."

No such joinder motion was filed within 20 days after the Order denying the original Motion for Summary Judgment.

Neither Defendant Brown Boveri or potential third-party defendant Gould is well placed to object to the late joinder of Gould. It is Defendant Brown Boveri which, by filing the Revised Motion for Summary Judgment, reopened the issue of successor liability. Gould has voluntarily, in cooperation with Defendant Brown Boveri, claimed successor liability.

The record shows that Defendant Brown Boveri and Gould are cooperating in the defense of this action, and they both have a legitimate identical interest to demonstrate that plaintiff Charles Grugan's injuries were not caused by a defect in the circuit breaker cabinet. The interests of Defendant Brown Boveri and Gould diverge only in the apportionment of successor liability once basic liability has been found.

---

**5.** We are aware of the note in *Bippus v. Norton,* 437 F.Supp. 104, 105, n. 1 to the following effect: "Plaintiffs contend that both parties should be liable. This, however, is not possible. If the sales agreement did not transfer products liability risk to the purchaser, then Dresser could not be liable. If the agreement did transfer such liability, then Reed is protected and cannot be liable. Liability against both parties is therefore not possible." This appears to conflict with *Husak, supra,* with regard to the rights of the plaintiffs and of Defendant Bechtel against Gould, and we will therefore follow Pennsylvania law as set forth in *Husak.*

Consequently, I will grant Defendant Bechtel's Motion for Leave to File a Third-Party Complaint, and will deem the Third-Party Complaint attached as an exhibit to the Motion to have been filed as of the date of the Order attached to this Opinion. I will, furthermore, allow plaintiffs twenty-days in which to add Gould as an additional defendant in this case.

An appropriate Order follows.

### ORDER

AND NOW, this 24th day of January, 1990, upon consideration of Revised Motion for Summary Judgment of Defendant BBC Brown Boveri, Inc. ("Defendant Brown Boveri"), Cross-Motion for Partial Summary Judgment of Defendants Bechtel Corporation, Bechtel Western Power Corporation and Bechtel, Inc. (collectively referred to as "Defendant Bechtel"), Plaintiffs' Cross-Motion for Summary Judgment and Defendant Bechtel's Motion for Leave to File a Third-Party Complaint against Gould, Inc., for the reasons given in the attached Opinion, IT IS ORDERED THAT:

1. Defendant Brown Boveri's Revised Motion for Summary Judgment is DENIED.

2. Defendant Bechtel's Cross-Motion for Partial Summary Judgment and Plaintiffs' Cross-Motion for Summary Judgment are GRANTED to the extent that Defendant Brown Boveri, Inc. is found to be a successor to the liability of ITE Imperial arising out of the circuit breaker cabinet involved in this case and the Motion is otherwise DENIED.

3. Defendant Bechtel's Motion for Leave to File a Third-Party Complaint against Gould, Inc. is GRANTED, and the Third-Party Complaint attached as an exhibit to the Motion shall be deemed to have been filed as of the date of this Order.

4. Plaintiffs Charles T. Grugan and Therese A. Grugan are granted 20 days from the date of this Order to file a Complaint against Gould, Inc.