**Naomi FREED, Plaintiff,**

v.

**UNITED STATES AVIATION UNDERWRITERS, INC., Defendant.**

**No. 86 Civ. 0471 (LFM).**

United States District Court, S.D. New York.

Dec. 23, 1987.

Quirk and Bakalor, P.C., New York City, for defendant; by Robert E. Quirk.

Freed & Lerner, New York City, for plaintiff; by Lance M. Freed.

**OPINION**

MacMAHON, District Judge.

Defendant, United States Aviation Underwriters, Inc. ("USAU"), moves for sum-

mary judgment, pursuant to Rule 56(b), Fed.R.Civ.P.

## BACKGROUND

Plaintiff, Naomi Freed, brought this action for personal injuries allegedly sustained while a passenger aboard a Braniff airplane enroute from New York City to Cali, Colombia. The accident occurred on or about December 25, 1977. This is the second action brought by plaintiff for these injuries.

Plaintiff first commenced an action in this court against Braniff on April 18, 1979. Discovery proceeded and the case was set for trial in September 1982. In the interim, Braniff had filed for bankruptcy on May 13, 1982 in the United States Bankruptcy Court for the Northern District of Texas, and plaintiff's original action was automatically stayed. 11 U.S.C. § 362(a) (1982).

Upon a calendar call of three-year-old civil cases on September 8, 1982, we directed plaintiff to seek relief from the stay from the bankruptcy court and proceed with the action or terminate it.[1] Plaintiff, however, failed to seek relief from the stay at that time. While she delayed, the bankruptcy court set July 15, 1983 as the bar date to file proofs of claim in the reorganization proceedings.

Although Braniff had listed plaintiff's claim as a contingent claim and notice of the bar date was mailed to all scheduled creditors, including plaintiff, and published in *The Wall Street Journal* and other newspapers, plaintiff failed to file proof of claim.[2] The reorganization plan was affirmed by the bankruptcy court on September 1, 1983.

More than two years later, on December 17, 1985, plaintiff first applied to the bankruptcy court for relief from the automatic stay. That court, following an evidentiary hearing, denied her application, holding that her claim against Braniff was forever barred because of her failure to file sufficient proof of claim. *In re Braniff Airways, Inc.*, No. 482–00369 (Bankr.N.D.Tex. Mar. 4, 1986) [Available on WESTLAW, 1986 WL20463] (order denying motion for relief from automatic stay). Subsequently, the bankruptcy court denied plaintiff's motion for reconsideration. *In re Braniff Airways, Inc.*, No. 482–00369 (Bankr.N.D. Tex. Sept. 26, 1986).

Braniff then moved for summary judgment dismissing the action pending against it in this court. We granted the motion, holding that plaintiff was collaterally estopped by the two orders of the bankruptcy court from relitigating the issue of the viability of her claims against Braniff. *Freed v. Braniff Airways, Inc.*, 119 F.R.D. 10 (S.D.N.Y.1987) (order granting summary judgment). Before our decision was filed, however, plaintiff commenced the instant direct action against USAU as insurer of Braniff.

We turn now to the merits of the motion.

## DISCUSSION

Rule 56 imposes on the moving party the heavy burden of showing "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Supreme Court recently clarified that when the non-moving party bears the burden of proof on an issue, "the burden on the moving party may be discharged by 'showing' ... that

---

**1.** At the pretrial conference, the following exchange took place between the Court and plaintiff's attorney:

MR. LURIE: Your Honor, with respect to the stay in the Texas bankruptcy court, may we have your specific directions as to how to proceed?

THE COURT: Apply to get it lifted or get it lifted by stipulation. I am not going to keep this on the calendar forever.

MR. LURIE: No, I would like to proceed as soon as possible.

THE COURT: And if the court won't lift it, it won't lift it, but at least make the effort.

**2.** Section 1111(a) of the Bankruptcy Code, 11 U.S.C. § 1111(a) (1982), provides that all claims listed by a debtor in its schedule of claims are deemed to be filed unless the debtor lists a claim as "disputed, contingent, or unliquidated." Because Braniff listed Freed's claim as disputed, Freed was required to file a proof of claim by the bar date established by the bankruptcy court. Failure to file forever forecloses participation in the debtor's reorganization. *In re South Atlantic Financial Corp.*, 767 F.2d 814, 817 (11th Cir.1985).

there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986).

There is no dispute as to any of the material facts which we have recited, and, applying the most recent standard of the Supreme Court, we grant USAU's motion for summary judgment.[3]

■ USAU contends that its motion should be granted because plaintiff has failed to comply with the statutory prerequisite of obtaining a judgment against Braniff, the insured, before commencing a direct action against the insurer. The statutory basis for plaintiff's direct action is N.Y. Insurance Law § 3420 (McKinney 1985), which, in pertinent part, provides:

(a) No policy or contract insuring against liability for injury to person ... shall be issued or delivered in this state, unless it contains in substance the following provisions or provisions which are equally or more favorable to the insured and to judgment creditors so far as such provisions relate to judgment creditors:

(1) A provision that the insolvency or bankruptcy of the person insured ... shall not release the insurer from the payment of damages for injury sustained ... during the life of and within the coverage of such policy....

(2) A provision that in case judgment against the insured ... in an action brought to recover for injury sustained ... during the life of the policy ... shall remain unsatisfied ... an action may ... be maintained against the insurer under the terms of the policy ... for the amount of such judgment not exceeding the amount of the applicable limit of coverage....

The statute, considered as a whole, we think, requires at least two prerequisites to a direct action: (1) the bankruptcy or insolvency of the insured; and (2) an unsatisfied judgment against the insured. *See Abbate v. Medbrod,* 109 A.D.2d 768, 769, 486 N.Y. S.2d 282, 283 (N.Y.App.Div.1985).

Plaintiffs contend, however, that a judgment against the insured is not a prerequisite to a direct action, relying on *In re F.O. Baroff Co.,* 555 F.2d 38 (2d Cir.1977). Plaintiff's reliance is misplaced.

First, we note that *Baroff* was not brought pursuant to the direct action statute. The "novel but narrow" question addressed in *Baroff* was whether the admittedly liable bankrupt defendant should retain insurance proceeds paid to it on the loss that gave rise to plaintiff's unsatisfied claim. 555 F.2d at 39. The plaintiff, a bank that had guaranteed endorsements that were forged by a broker's employees, sued the broker for losses caused by the forgeries. 555 F.2d at 40. None of the parties disputed that the broker was liable to the bank. 555 F.2d at 40 n. 3. The Broker's Blanket Bond indemnifying the broker against losses resulting from forgeries had already been paid to the defendant broker in full. 555 F.2d at 40. The broker was in bankruptcy, however, and the broker's trustee refused to pay over the indemnity bond proceeds. The trustee argued that, because the insurer gained no windfall from the bankruptcy, having paid on the policy, the statutory provision that bankruptcy of an insured shall not release the insurer from payment of damages was inapplicable. 555 F.2d at 41. On appeal from decisions by the bankruptcy court and the district court in favor of the trustee, the Court of Appeals reversed.

The Court of Appeals rejected the trustee's contention that the predecessor of § 3420(a)(1) was intended only to avoid windfalls to insurers, holding instead that it "was intended by the Legislature to mitigate the effects of an insured person's bankruptcy on those to whom the insured has liability within the scope of the policy, creating in effect a trust fund of the insurance proceeds for the benefit of the injured person." 555 F.2d at 42. That the bank had not obtained a judgment against the broker prior to the broker's bankruptcy was held unimportant, because "[t]he legislative history of [the statute] makes clear

---

**3.** The first ground for USAU's motion, that USAU was not the proper insurer for plaintiff to sue, appears to involve questions of fact that would require additional discovery to resolve.

that it was not intended to establish any difference in the substantive rights of one who has procured a judgment against his injurer before bankruptcy and one who has not." 555 F.2d at 43. Thus, the Court of Appeals' interpretation of the bankruptcy provision only applies when the injured party sues the bankrupt for insurance money paid to the bankrupt on admitted liability. Plaintiff's reliance on *Baroff* in the instant case, a direct action against the insurer when the insured's liability is not established, cannot be sustained.

As the direct action provision is essential to the viability of plaintiff's action here, as it was not in *Baroff*, we must analyze the legislative history of the statute more closely. New York courts have stated consistently that the direct action provision is in derogation of the common law and, therefore, should be construed strictly. *See McNamara v. Allstate Ins. Co.*, 3 A.D. 2d 295, 160 N.Y.S.2d 51 (N.Y.App.Div. 1957); *Royal Indem. Co. v. Travelers Ins. Co.*, 244 A.D. 582, 280 N.Y.S. 485 (N.Y. App.Div.1935), *aff'd*, 270 N.Y. 574, 1 N.E. 2d 337 (1936). The original version of the direct action statute, N.Y. Insurance Law § 109 (Consol.1909), *added* by 1917 N.Y. Laws c. 524, did not require plaintiffs to obtain a judgment prior to bringing a direct action against the insurer of an insolvent or bankrupt insured.[4] The statute was amended almost immediately to provide that the prerequisite to a direct action was that "execution against the insured is returned unsatisfied in an action brought by the insured ... because of such insolvency or bankruptcy...." 1918 N.Y.Laws c. 182. With this important modification, we agree with the *Baroff* court that subsequent re-enactments and codifications were not intended to alter the substantive rights of the parties. *See* 555 F.2d at 43 n. 6. The later versions of the direct action statute all speak in terms of "judgment creditors" and include the provision for direct actions *after* return of a judgment unsatisfied.[5]

Finally, the procedural posture of *Baroff* distinguishes it from the instant case. *Baroff* reached the Court of Appeals as an appeal from a bankruptcy court determination. In contrast, plaintiff here failed to present her claim against the insured in bankruptcy court despite notice and opportunity to do so; indeed, despite our direction to do so. She then failed to take a timely appeal from the bankruptcy court's determination. Had plaintiff properly presented her claim, the bankruptcy court could have lifted the stay if satisfied that insurance was available to satisfy liability. As a result of plaintiff's dilatory conduct, we, unlike the court in *Baroff*, are faced with a conflict between the interest of finality inherent in the permanent injunction and the policies of § 3420.

 Plaintiff failed to preserve her claims against Braniff in the proper forum. Consequently, her lapses now foreclose her claims against USAU as well. We are not insensitive to her plight, but it cannot persuade us to sanction an end run around both New York's direct action statute and the procedures set forth in the Bankruptcy Code.

Accordingly, we grant defendant USAU's motion for summary judgment.

Settle judgment on notice within fifteen (15) days.

---

4. Section 109 of N.Y.Insurance Law (Consol. 1909), *added by* 1917 N.Y.Laws c. 524, provided that each liability policy must contain:
   a provision that the insolvency or bankruptcy of the person insured shall not release the insurance carrier from the payment of damages for injury sustained or loss occasioned during the life of the policy, and stating that in case of such insolvency or bankruptcy, an action may be maintained by the injured person against such corporation under the terms of the policy for an amount not exceeding the amount of the policy.

5. *See* 1939 N.Y.Laws, c. 882, § 167, and amendments indicated in the Historical Note to N.Y. Insurance Law § 3420 (McKinney 1985).