**GALECOR, INC., Plaintiff,**

v.

**INSTITUTE OF LONDON UNDERWRITERS, et al., Defendants.**

**Civ. A. No. 86–7089.**

United States District Court, E.D. Pennsylvania.

Jan. 30, 1990.

Fern B. Caplan, Philadelphia, Pa., for plaintiff.

J. Grant McCabe and Sandra Drimak, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

DITTER, District Judge.

Before me is a motion for judgment on the pleadings by the insurer of a bankrupt. Because the injured plaintiff can neither maintain the statutory direct action against the insurer provided by New York law nor establish that it is a third-party beneficiary of the bankrupt's policy, the motion will be granted and judgment will be entered on behalf of the defendant.[1]

*Facts*

This action is brought under an insurance policy issued by defendant, Federal Insurance Company, to National Airlines, Inc., to recover for damages suffered by plaintiff, Galecor, Inc., for the alleged loss of 191 air cargo containers. These containers were owned by Galecor, but leased to National in 1983 and used in National's air transport business. In early 1986, Galecor filed a complaint in this court against National for breach of the lease agreement following the loss of the cargo containers. On June 12, 1986, default judgment was entered against National. However, two days earlier, on June 10, 1986, National had filed a petition for reorganization, under Chapter 11 of the United States Bankruptcy Code, in the United States Bankruptcy Court for the Eastern District of New York (Case No. 186–61191–353). The filing of the petition effectuated an automatic stay of any and all proceedings against National. 11 U.S.C. § 362. Because the bankruptcy of National impeded the efforts of Galecor to recover its losses from National, Galecor sued National's insurers. In an amended complaint, Galecor proceeds against Federal pursuant to New York's direct action statute, which provides under certain circumstances for recovery against the insurer by an injured third party on a policy issued to a bankrupt insured. 27 N.Y.Ins.Law § 3420 (McKinney 1985). Alternatively, Galecor claims that regardless of the applicability of the direct action statute, Galecor, as a third-party beneficiary of the contract of insurance between Federal and National, is entitled to recoup its losses from Federal.

*Direct Action*

■ Galecor relies on 27 N.Y.Ins.Laws § 3420(a)(1) and (2) as the first basis for its suit against Federal.[2] Galecor posits that

---

1. Since the defendant has attached to its motion for judgment on the pleadings matters outside the pleadings and the plaintiff has been given the opportunity to respond to these new matters, I will treat this motion as one for summary judgment and proceed under Fed.R.Civ.P. Rule 56. *See,* Fed.R.Civ.P. Rule 12(c).

2. Sections 3420(a)(1) and (2) provide as follows: (a) No policy or contract insuring against liability for injury to ..., or destruction of, property shall be issued or delivered in this state, unless it contains in substance the following provisions or provisions which are equally or more favorable to the insured and to judgment creditors ...
(1) A provision that the insolvency or bankruptcy of the person insured, or the insolvency of his estate, shall not release the insurer from the payment of damages for injury sustained or loss occasioned during the life of and within the coverage of such policy or contract.
(2) A provision that in case judgment against the insured or his personal representative in

it has secured a default judgment against National which has gone unsatisfied, notified National and Federal of the judgment, and now may collect from Federal the amount of the unsatisfied judgment. Federal contends, however, that section 3420(a)(2) is inapplicable for a number of reasons. First, Federal argues that the automatic stay prevented the entry of default judgment against National, so Galecor is not a judgment creditor of National's, a prerequisite to liability on Federal's part. Second, Federal asserts that even if the default judgment is capable of enforcement, no notice of it was given to Federal; therefore, Federal is released from payment on the policy. Finally, Federal contends that the terms of the insurance policy at issue here do not permit the maintenance of this action without an entry of judgment after trial on the merits. However, because I agree with Federal's first contention that an enforceable judgment against National is a prerequisite to establishing Federal's liability, I will not address Federal's remaining arguments.

Section 3420(a)(2) and its predecessor sections 109 and 167(1)(b) of the New York Insurance Law were enacted to rectify what the legislature saw as a grave injustice: the inability of injured third parties to maintain a cause of action against the insurer of a bankrupt because of a lack of privity of contract. *See Jackson v. Citizens Casualty Co.*, 277 N.Y. 385, 389, 14 N.E.2d 446, 447 (1938). Before the enactment of the statute, the insured's bankruptcy released the insurer from the policy. The statute was drawn to afford injured plaintiffs a means to recoup their losses from the insurer. *Id.*, 277 N.Y. at 390, 14 N.E.2d at 448. However, under section 3420(a)(2), the right to recover from the insurer is not absolute. A number of conditions must be met before the action is filed.[3] Each one is mandatory and a condition precedent to the validity of a determination under it. *Id.* Furthermore, because the statute is in derogation of the common law, New York courts have strictly construed its provisions. *See, e.g., McNamara v. Allstate Ins. Co.*, 3 A.D.2d 295, 160 N.Y.S.2d 51 (1957).

Despite the apparently narrow scope of section 3420(a)(2), Galecor argues that this action is permissible under a more expansive interpretation of the section announced by the Second Circuit in *Matter of F.O. Baroff Co., Inc.*, 555 F.2d 38 (2d Cir.1977). The "novel but narrow question" addressed in *Baroff* was whether the admittedly liable defendant's trustee who had received proceeds under a policy of insurance could retain those funds in the face of the plaintiff's claim against them. *Baroff*, 555 F.2d at 40. The Second Circuit reversed the bankruptcy court and district court decisions and held that the injured plaintiff had a valid and enforceable claim to the pro-

---

an action brought to recover damages for injury sustained or loss or damage occasioned during the life of the policy or contract shall remain unsatisfied at the expiration of thirty days from the serving of notice of entry of judgment upon the attorney for the insured, or upon the insured, and upon the insurer, then an action may, except during a stay or limited stay of execution against the insured on such judgment, be maintained against the insurer under the terms of the policy or contract for the amount of such judgment not exceeding the amount of the applicable limit of coverage under such policy or contract.

**3.** First, judgment against the insured, which (2) shall remain unsatisfied at the end of thirty days from (3) the serving of notice of entry of judgment upon (a) the attorney of the insured, or upon the insured and (b) upon the insurer and (4) the absence of any stay or limited stay of execution against the insured. *McNamara v.*

*Allstate Ins. Co.*, 3 A.D.2d 295, 160 N.Y.S.2d 51, 54 (1957). This last condition would seemingly bar Galecor from proceeding with this lawsuit at this time. Because I have not heard from the parties to the contrary, I assume that National is still in bankruptcy reorganization and the stay remains in effect. Courts in other jurisdictions have stayed actions filed against a liability insurer of a bankrupt insured. *See, e.g., MacArthur Co. v. Johns–Manville Corp.*, 837 F.2d 89 (2nd Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 176, 102 L.Ed.2d 145 (1988); *In re Johns–Manville*, 40 B.R. 219 (S.D.N.Y.1984). These courts reasoned that actions against the insurer may reduce available insurance proceeds, property of the estate of the bankrupt insured, and, therefore, are subject to the stay provision of 11 U.S.C. § 362(a)(3). However, since the parties failed to address this issue, National did not raise an objection, and the plaintiff cannot meet the other threshold requirements, I see no reason to discuss it further.

ceeds held by the trustee which was superior to the bankrupt estate's claim. *Id.*, at 44. In reaching its decision, the court relied upon sections 167(1)(a) and (b), the predecessor of sections 3420(a)(1) and (2), respectively. The court found that section 167(1)(a) was not only enacted to prevent windfalls to insurers of bankrupt insureds who under prior law were released from payment on the policy, but to "mitigate the effects of an insured person's bankruptcy on those to whom the insured has liability within the scope of the policy, by creating in effect a trust fund of the insurance proceeds for the benefit of the injured person." *Id.*, at 42. The court further concluded that section 167(1)(b) was not intended, despite express language to the contrary, to "establish any difference in the substantive rights of one who has procured a judgment against his injurer before bankruptcy and one who has not." *Id.*, at 43. Applying this reasoning to the instant case would yield a result in Galecor's favor. The fact that Galecor did not obtain an enforceable judgment against National would be of no import and Galecor would be entitled to the insurance proceeds.

However, I will not follow *Baroff* for a number of reasons. First, *Baroff* is factually dissimilar in that *Baroff* was not a suit against an insurer. Second, the Second Circuit ignored plain statutory language and relied instead on its interpretation of legislative history to achieve what it considered to be a desirable result. Finally, I find that *Baroff* should not apply in situations where the injured party did not file a claim in the bankruptcy court against the insured.

The plaintiff in *Baroff* did not sue under section 3420(a)(2), the direct action statute, nor could it have done so. The plaintiff could not have maintained a direct action against the insurer because the insurer had already paid the proceeds to the insured's trustee. The *Baroff* plaintiff could only sue the insured's trustee. This is a critical distinction between *Baroff* and this case. In *Baroff*, the insured's liability had been established prior to the suit and the policy proceeds had been released. Here, liability on the part of neither the insurer nor the bankrupt-insured has been established.[4] Galecor has no option but to sue Federal pursuant to the direct action provisions of section 3420. As the court in *Freed v. United States Aviation Underwriters, Inc.*, 82 B.R. 9, 12 (S.D.N.Y.1987), noted, the *Baroff* court's interpretation of the direct action provisions only applies when "the injured party sues the bankrupt for insurance money paid to the bankrupt on admitted liability." The *Baroff* court could afford to twist and bend the direct action provisions because the plaintiff's case did not rise or fall on the statute. However, because I am faced with a direct action case, unlike the *Baroff* court, I must look closely at what the statute says and only if it is ambiguous, examine the legislative history.

Clearly, the statute is not ambiguous. It provides that a judgment against the insured that has remained unsatisfied for thirty days is a prerequisite to suit against the insurer. That provision is no legislative fluke but a deliberate insertion. In its original 1917 version, the direct action statute did not require the injured plaintiff to obtain a judgment prior to bringing suit against the insurer of a bankrupt insured.[5] Just one year later, the statute was amended to provide that the prerequisite to a direct action is an "execution against the insured [which] is returned unsatisfied in an action brought against the insured ... because of such insolvency or bankruptcy."

---

4. In fact, Federal contends in its motion, at ¶ 18, that the alleged loss and damage to the air cargo containers is not a covered loss under the Federal policy. I express no opinion on the merits of this argument.

5. Section 109 of N.Y. Insurance Law (Consol. 1909), added by 1917 New York Laws c. 524, required that each liability policy contain:

a provision that the insolvency or bankruptcy of the person insured shall not release the insurance carrier from the payment of damages for injury sustained or loss occasioned during the life of the policy, and stating that in case of such insolvency or bankruptcy, an action may be maintained by the injured person against such corporation under the terms of the policy for an amount not exceeding the amount of the policy.

1918 N.Y.Laws c. 182. All subsequent versions of this section use the term "judgment creditor" to denote a proper direct action plaintiff and include the requirement that the judgment be returned unsatisfied before initiating suit. *Baroff* improperly dismisses these prerequisites from the statute. Section 3420 should be given its literal and intended meaning. I will not create exceptions to the clear language of the statute. Galecor is not a judgment creditor. Therefore, it cannot sue Federal pursuant to the direct action statute.

This conclusion is further buttressed by reference to the multitude of prior cases which have strictly construed the direct action statute. *See, e.g., Freed, supra; Tillman v. Fireman's Fund Insurance Co.,* 590 F.Supp. 246 (S.D.N.Y.1984); *Jackson v. Citizens Casualty Co., supra; Manshul Construction Corp. v. State Insurance Fund,* 118 A.D.2d 983, 500 N.Y.S.2d 87 (1986); *Abbate v. Medbrod,* 109 A.D.2d 768, 486 N.Y.S.2d 282 (1985); *McNamara v. Allstate Insurance Company, Chicago, Illinois, supra; Lang v. Merchants Mutual Casualty Co.,* 203 Misc. 258, 116 N.Y. S.2d 638 (N.Y.Sup.Div.1952). In these cases, the New York courts have stated consistently that the direct action provision is in derogation of the common law and must be strictly construed. For example, the notice of judgment requirement in the statute has been enforced without exception against plaintiffs who have failed to comply with the statutory mandate. *Manshul,* 500 N.Y.S.2d at 88; *Abbate,* 486 N.Y. S.2d at 283. Only in *Baroff* has a court taken liberties with the direct action statute. I can find nothing in the statute that leads me to conclude that the requirement that the plaintiff be an unsatisfied judgment creditor is different than, say, the requirement that the plaintiff provide prompt notice of the unsatisfied judgment to the insurer. Strict compliance with the statute is required if there is to be a direct action against the insurer. Given the long and unbending history of strict construction of the direct action statute, the inescapable conclusion is that since Galecor has not fulfilled the conditions precedent, I must grant Federal's motion for summary judgment.

Lastly, Galecor, unlike the plaintiff in *Baroff,* failed to file a formal claim as a creditor against National in the bankruptcy court. Moreover, Galecor made no effort to seek a lift of the automatic bankruptcy stay to pursue its claim against National. As the court in *Freed,* at 12, succinctly put it:

> [p]laintiff failed to preserve her claim against ... [the bankrupt insured] ... in the proper forum. Consequently, her lapses now foreclose her claims against ... [the insurer] ... as well. We are not insensitive to her plights, but it cannot persuade us to sanction an end run around both New York's direct action statute and the procedures set forth in the Bankruptcy Code.

*Third–Party Beneficiary*

■ As an alternative, Galecor contends that it can recover from Federal as a third-party beneficiary of the insurance policy issued by Federal to National, arguing that the certificate of insurance issued to Galecor creates this right.[6] Federal insists, however, that the insurance policy is unambiguous in its intention *not* to include Galecor as a third-party beneficiary. Federal argues that Galecor is at best a mere incidental beneficiary of an unambiguous insurance contract without any enforceable rights under it. I agree.

Here, the intention of Federal and National is patently clear from the provisions of the policy: Galecor is not an intended third-party beneficiary. Galecor is not explicitly mentioned in the policy nor does it come within the policy's definitions of those to whom payments are to be made. Under the terms of the policy, a benficiary is either a named insured or a "person insured." (Exhibit D(3) p. 1, Item 1(a), and p.

---

6. Galecor also argues that "the determination of whether plaintiff Galecor is, in fact, a third party beneficiary of the Federal policy involves an interpretation of law and fact which must be observed by the trier of fact." (Plf. mem. in opp. at 8). This is incorrect. The determination of the meaning or intent of an ascertained and unambiguous policy of insurance is solely a question of law appropriate for resolution by the court upon motion.

**1106**

6, ¶ 7). Galecor is neither. A "person insured" under the policy is:

> any other person or organization to such extent and for such limits of liability ... as the Named Insured has agreed by Approved Contract before a loss to provide insurance for such interest.

(Exhibit D(3) p. 6–7, ¶ 7). An "approved contract" is defined as:

> any written contract or agreement entered into by the Named Insured in which the Named Insured has agreed to assume liability of another person or organization for bodily injury, property damage or personal injury.

(Exhibit D(3), p. 17, ¶ d). Had National agreed to indemnify or insure Galecor against loss caused by or to the containers, the lease would have been an "approved contract." There is no such provision in the Galecor–National agreement. Moreover, an organization which rented property to National is expressly excluded from the "persons insured" definition in the policy. (Exhibit D(3), p. 7, ¶ 7(E)) ("No person or organization other than the named insured ... shall be an Insured with respect to property damage to property ... rented or loaned to ... the Named Insured.") The policy even goes so far as to expressly state that "this insurance does not apply to property damage to property occupied by or used by or rented to the Insured." (Exhibit D(3), p. 10, ¶ 9(f)(2)). There is no language or provision in the contract that could even remotely support Galecor's contention that it is a third-party beneficiary under the insurance policy.

Galecor urges me to look outside the policy for extrinsic evidence which shows, according to Galecor, that it is an intended beneficiary under the policy. Galecor maintains that the certificate of insurance is extrinsic evidence of the intent to grant Galecor third-party beneficiary status. Since I find that the insurance contract is not ambiguous, it would be improper to look to extrinsic evidence for the intent of the parties. However, assuming, *arguendo*, that the certificate of insurance was some evidence of intent, I would conclude that it, too, does not permit Galecor to prosecute this action as a third-party beneficiary of the insurance contract. Whatever rights, if any, Galecor received from the certificate of insurance are "subject to policy coverage, terms, conditions, limitations and exclusions." (Exhibit C(1)). Because the policy excludes a right of action on the policy, so must the certificate of insurance. At best, the certificate attests to the fact that Galecor has an insurable interest in the containers. But, the existence of an insurable interest does not confer, absent contractual language to the contrary, third-party status on its holder. *See, Stainless, Inc. v. Employers' Fire Insurance Co.*, 69 A.D.2d 27, 418 N.Y.S.2d 76 (1979), *aff'd*, 49 N.Y.2d 924, 428 N.Y.S.2d 675, 406 N.E.2d 490 (1980).

*Conclusion*

Each and every condition of New York's direct action statute, section 3420(a)(2), must be satisfied prior to commencement of a direct action against a bankrupt's insurer. Galecor failed to secure a valid judgment against the bankrupt National, so it cannot proceed against Federal under section 3420. Additionally, Galecor cannot demonstrate that the National and Federal intended to create in Galecor third-party rights in the insurance policy. Since there are no genuine issues of material fact in dispute and plaintiff has shown no right to relief, I will grant Federal's motion for judgment on the pleadings.