**Francis GIRARD, Plaintiff,**

v.

**ALLIS CHALMERS CORPORATION, INC., and Fiat Allis Construction Machinery, Inc., Defendants.**

Civ. A. No. 85–1833.

United States District Court, W.D. Pennsylvania.

Feb. 21, 1992.

officials acting for the state. *Wyatt*, 928 F.2d at 722 n. 5.

Caroline Mitchell, Pittsburgh, Pa., for plaintiff.

Raymond Conaway, Pittsburgh, Pa., for defendants.

## MEMORANDUM ORDER

D. BROOKS SMITH, District Judge.

### I.

On October 6, 1983, Francis Girard was using an HD–21 crawler tractor (bulldozer) manufactured by Allis Chalmers Corporation, Inc. (Allis Chalmers), when the engine stalled for undetermined reasons. The bulldozer rolled downhill backwards, and Girard was injured. On August 12, 1985, he filed a products liability complaint alleging that the bulldozer was defectively designed by defendants Allis Chalmers and Fiat Allis Construction Machinery (Fiat Allis) because the bulldozer's braking system is inadequate in dead engine situations, and because inadequate warnings of this condition were supplied to users of the bulldozer.

Before the Court at this time is defendants' motion for summary judgment.[1] Defendants argue that if there is any liability for products liability claims involving the HD–21 model, that the liability is solely that of Allis Chalmers which built it, and that because Allis Chalmers was discharged in bankruptcy, plaintiff's claims must be dismissed. Plaintiff argues that liability for product liability claims against Allis Chalmers was expressly assumed by Fiat Allis, now known as Fiatallis North America, Inc., making Allis Chalmers' bankruptcy discharge irrelevant to Fiat Allis' liability. Further, plaintiff argues that because defendant did not schedule his claim against Allis Chalmers in the bankruptcy court Allis Chalmers remains liable notwithstanding its discharge. Finally, plaintiff asserts that Fiat Allis breached its duty to warn of the design defect in the braking system and/or to attempt to retrofit the HD–21 model, regardless of the status of the claims against Allis Chalmers. Having reviewed the record, the Court grants summary judgment to Allis Chalmers and denies summary judgment to Fiat Allis.

### II.

Federal Rule of Civil Procedure 56(c) requires the entry of summary judgment "... if ... there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." The requirement is that there be no *genuine* issue of *material* fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). (emphasis in original).

A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under the substantive law applicable to the case. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510; *Levendos v. Stern Entertainment, Inc.*, 860 F.2d 1227, 1233 (3d Cir.1988).

### III.

Certain historical facts are not in dispute. The HD–21 model was designed and manufactured by Allis Chalmers; the bulldozer involved in this matter, Serial No. 17662,

1. Plaintiff filed a cross motion for summary judgment which is denied as untimely.

was built in 1970, placed into service on March 31, 1971, and operated without incident for approximately 12 years. At the time of the accident, the bulldozer was owned by Girard's employer, Viglione Construction Company, and serviced by Highway Equipment Corporation, a Fiat Allis dealer. In 1973, Allis Chalmers, a Delaware corporation based in Wisconsin, and Fiat S.p.A., an Italian corporation, entered into a joint venture to manufacture heavy construction machinery which created Fiat Allis Construction Machinery Inc. (now Fiatallis North America, Inc.). Fiat Allis continued to produce HD–21 bulldozers in the same Springfield, Illinois plant formerly operated by Allis Chalmers. Allis Chalmers continued in existence, but did not manufacture heavy construction machinery after the creation of Fiat Allis. The Joint Venture Agreement, executed July 12, 1973, did not contain any agreement expressly obligating Fiat Allis to assume any liability for claims involving machinery built before the creation of the joint venture. Plaintiff's Exhibit "1". On December 13, 1975, Fiat S.p.A. and Allis Chalmers entered into an Indemnification Agreement with Fiat Allis by which Fiat Allis agreed to defend and indemnify Fiat S.p.A. and Allis Chalmers in product liability claims involving heavy construction machinery, including the HD–21, manufactured before January 4, 1974. Plaintiff's Exhibit "2".

On June 29, 1987, Allis Chalmers and related corporations filed voluntary petitions under chapter 11 of the Bankruptcy Code in the Bankruptcy Court for the Southern District of New York, Bankruptcy Nos. 87–B–11225 through 87–B–11242. Motion to Stay Proceedings, Exhibit "A" (Docket no. 41). Notice of this filing was given to plaintiff in this matter by an Order of this Court on July 14, 1987, staying this action. See Motion for Continuance (Docket no. 52). Allis Chalmers did not list plaintiff's claim in the schedule of debts filed in the bankruptcy court, Plaintiff's Response (Docket no. 76), and plaintiff never filed a proof of claim in the bankruptcy court. Kennedy Affidavit (Docket no. 63). On October 31, 1988, the bankruptcy court confirmed Allis Chalmers' plan of reorganization and entered an order discharging all obligations of Allis Chalmers. Defendants' Motion for Summary Judgment, Exhibit "C".

## IV.

As a result of the October 31, 1988 Order of the Bankruptcy Court of the Southern District of New York, all claims against Allis Chalmers were discharged except as otherwise provided in the Order. Motion for Summary Judgment Exhibit "C", 17. 11 U.S.C. § 1141(d)(1). Allis Chalmers' failure to schedule plaintiff's contingent unsecured claim does not affect this result, because plaintiff had actual notice of the bankruptcy case in time to file a claim.[2] 11 U.S.C. § 523(a)(3)(A). See id., § 1141(d)(2).

Plaintiff claims that Allis Chalmers is estopped from claiming the benefits of the bankruptcy discharge because it "represented that scheduled claimants were covered by insurance issued by Fireman['s] fund, with Allis Chalmers as the named insured." Plaintiff's Memorandum, 73–74. See also id., 72. The evidence upon which plaintiff bases this claim, however, in no way supports a claim of estoppel. See Plaintiff's Exhibit "6.3". The letter, from an attorney of the firm representing Allis Chalmers in bankruptcy proceedings to an attorney described as liaison counsel for plaintiffs with product liability claims, merely describes the types of insurance written for Allis Chalmers by Fireman's Fund. Further, even if the letter could possibly be interpreted as plaintiff's counsel suggests, a representation "that scheduled claimants were covered by insurance" in no way creates an estoppel in favor of an unscheduled claimant. Allis Chalmers' motion for summary judgment is granted.

## V.

Fiat Allis' motion for summary judgment must be analyzed in light of the two types

---

**2.** The bar date was February 29, 1988, Kennedy Affidavit, Exhibit "A", 2, more than seven months after plaintiff had received notice of the bankruptcy filing. See Docket no. 41.

of claims brought against it. Plaintiff brings products liability and negligence claims against Fiat Allis both for alleged defects in design and manufacture of the HD–21's braking system and for failure to warn of the defect. *See* Amended Complaint, ¶¶ 18, 22 (Docket no. 68); Complaint, ¶¶ 10, 20.

## A.

■ Fiat. Allis' motion for summary judgment is denied as to the failure to warn causes of action sounding in products liability and negligence. Defendants' cursory brief, which does not even separately treat the issue of Fiat Allis' potential direct liability, fails to meet the high standard of proof mandated by Rule 56 that "as a matter of law" it cannot be directly liable to plaintiff.

■ To the contrary, it appears that a claim for Fiat Allis' direct liability is maintainable. Although there is no authoritative Pennsylvania case addressing the question of the duty to warn a predecessor's customer, the Court of Appeals for the Third Circuit, following the majority of courts, has quite clearly stated that where there is a continuing relationship between the successor corporation and the predecessor's customer, there may be a duty to warn of product defects. *LaFountain v. Webb Industries Corp.*, 951 F.2d 544 (3d Cir.1991). Here, defendant Fiat Allis has stated in its answers to interrogatories that it succeeded to the dealer contract with Allis Chalmer's authorized dealer, Highway Equipment Corporation. Plaintiff's Exhibit "3", Interrogatories 3.40, 3.41, 3.43. Fiat Allis has also supplied service records from 1971 to at least 1981 indicating that Highway Equipment Corporation actually serviced the bulldozer plaintiff was using

when he was injured. Plaintiff's Exhibit "5.8". Additionally, it appears that potential problems with the HD–21's dead engine braking were explored by Allis Chalmers and by Fiat Allis engineers. *See* Plaintiff's Exhibit "4", Interrogatories 13, 14, 17, 19, 21, 43, 51. Fiat Allis' knowledge of the potential braking problems, together with Fiat Allis' continuing relationship with Highway Equipment Corporation, create the possibility of a duty to warn on the part of Fiat Allis. *See Polius v. Clark Equipment Co.*, 802 F.2d 75 (3d Cir.1986).[3]

## B.

■ Finally, Fiat Allis moves for summary judgment on the defective design causes of action, asserting that it is not liable as a successor to Allis Chalmers. The traditional rule is that a corporation which acquires the manufacturing assets of another does not thereby acquire the predecessor corporation's liability unless:

1. the successor expressly or impliedly agrees to assume the predecessor's liabilities.

2. the transaction is a *de facto* merger.

3. the successor is a mere continuation of the predecessor; or

4. the transaction is fraudulent and for the purpose of evading liability.

■ *See generally Mozingo v. Correct Mfg. Corp.*, 752 F.2d 168, 174–75 (5th Cir. 1985). Addressing these exceptions in reverse order, it is undisputed that the Joint Venture Agreement between Fiat S.p.A. and Allis Chalmers was not fraudulent or designed to evade liability. Next, under the "mere continuation" exception, the Pennsylvania Superior Court has adopted the product line exception which provides

---

**3.** Although the Third Circuit recognized that the failure to warn cause of action really is based on a theory of negligence, *LaFountain, supra,* the Pennsylvania Superior Court has recognized potential post-sale failure to warn causes of action under products liability law. *Walton v. Avco Corp.*, 383 Pa.Super. 518, 557 A.2d 372, 378–79, *allocatur granted,* 524 Pa. 594, 599, 568 A.2d 1245, 1249 (1989). *Cf. Elmer v. Tenneco Resins, Inc.,* 698 F.Supp. 535 (D.Del.1988) (no duty to warn under Delaware law where succes-

sor corporation did not manufacture same products); *Hoover v. Recreation Equipment Corp.,* 763 F.Supp. 210 (N.D.Ohio 1989) (Ohio law).

Plaintiff adds an argument in his memorandum that defendants had a duty to retrofit the bulldozer if necessary. Although it is not necessary to reach the issue at this point, Pennsylvania law generally does not recognize such a duty. *Habecker v. Copperloy Corp.,* 893 F.2d 49, 54 (3d Cir.1990), appeal after remand, 942 F.2d 210 (3d Cir.1991).

that when the successor corporation buys substantially all of the assets of the predecessor, the predecessor goes out of business thereby, and the successor corporation continues to manufacture the same product, liability passes to the successor corporation as well. *Dawejko v. Jorgenson Steel Co.*, 290 Pa.Super. 15, 434 A.2d 106 (1981). An indispensable element of this exception—that the claimant's potential remedy against the original corporation is destroyed by the transfer of assets to the successor corporation—is missing here. *See LaFountain*, 951 F.2d at 547 (citing *Conway v. White Trucks*, 885 F.2d 90 (3d Cir.1989)); *Hack v. H.V.R. Parts*, 742 F.Supp. 283 (W.D.Pa.1990) *aff'd mem.*, 925 F.2d 417 (3d Cir.1991).

Plaintiff argues that the Joint Venture Agreement creating Fiat Allis must be considered a *de facto* merger, and in support submits affidavits from an attorney and from an engineer who deliver expert opinions that the Fiat Allis joint venture was a *de facto* merger. I will resist the temptation to evaluate herein the credentials of plaintiff's engineer to give a legal opinion, I will simply reject both of plaintiff's affidavits. The interpretation of an unambiguous contract is a matter of law for the court, *Catasauqua Area School District v. Raymark Industries, Inc.*, 662 F.Supp. 64, 69 (E.D.Pa.1987), and is not aided by professionally conclusory opinions. The Joint Venture Agreement, insofar as it sets forth the reciprocal obligations of the defendants relevant to the question of a *de facto* merger, is unambiguous.

The leading case in this Circuit describing the general law of *de facto* merger is *Philadelphia Electric Co. v. Hercules, Inc.*, 762 F.2d 303 (3d Cir.), *cert. denied*, 474 U.S. 980, 106 S.Ct. 384, 88 L.Ed.2d 337 (1985), which adopted the opinion of Judge McGlynn of the Eastern District of Pennsylvania, *Philadelphia Electric Co. v. Hercules, Inc.*, 587 F.Supp. 144, 151–52 (E.D.Pa.1984), *rev'd*, 762 F.2d 303 (3d Cir. 1985):

> In determining whether a particular transaction amounts to a de facto merger as distinguished from an ordinary purchase and sale of assets most courts look to the following factors:
>
> (1) There is a continuation of the enterprise of the seller corporation, so that there is continuity of management, personnel, physical location, assets and general business operations.
>
> (2) There is a continuity of shareholders which results from the purchasing corporation paying for the acquired assets with shares of its own stock, this stock ultimately coming to be held by the shareholders of the seller corporation so that they become a constituent part of the purchasing corporation.
>
> (3) The seller corporation ceases its ordinary business operations, liquidates, and dissolves as soon as legally and practically possible.
>
> (4) The purchasing corporation assumes those obligations of the seller ordinarily necessary for the uninterrupted continuation of normal business operations of the seller corporation. 762 F.2d at 310 (citations omitted).

Again, fatal to plaintiff's maintenance of a successor liability claim under the *de facto* merger theory is the continuation in business of the Allis Chalmers Corporation. Although plaintiff correctly points out that Allis Chalmers divested itself of its construction equipment division and ceased to make bulldozers, that is not the legal equivalent of the liquidation and dissolution of the seller *corporation*. This is in accord with the purpose of successor liability generally which, as an exception to the general rule of nonliability, should be imposed only where a remedy against the original corporation has been destroyed by the merger.

Finally, it is necessary to examine the 1973 Joint Venture Agreement between Fiat S.p.A. and Allis Chalmers, and the December 13, 1975 Agreement between Fiat S.p.A., Allis Chalmers, and Fiat Allis to consider whether Fiat Allis expressly or impliedly assumed the liabilities of Allis Chalmers for claims arising out of Allis Chalmers' manufacture of the HD–21 bulldozer in 1970.

Plaintiff asserts that Fiat Allis received all of Allis Chalmers' assets and liabilities, Plaintiff's Memorandum, 33, and cites as support defendants' answer to Interrogatory no. 3.24. That interrogatory answer, however, merely directs one to the Joint Venture Agreement for the answer to the question what assets and liabilities did the Agreement transfer. Examining the Joint Venture Agreement, it is immediately apparent that there is *no* language referring to liabilities which expressly transfers Allis Chalmers' liabilities to Fiat Allis. *See e.g.* Article 8 ("liabilities reasonably incurred by it in the termination of a dealer"); Schedule 2 to Joint Venture Agreement, Article V ("All liabilities shall be valued at the full amounts payable"); Article VI ("Other reserves and accrued liabilities ..."). In fact, the provision of the Agreement expressly addressing indemnification, Article 12, calls for *Allis Chalmers* to indemnify *Fiat Allis* "by reason of any event occurring up to the Closing." No provision, in short, is made for Fiat Allis even to indemnify Allis Chalmers, much less to assume its liability.

No doubt because of this lack of provision for indemnification, the parties to the Joint Venture Agreement executed in 1975 an Agreement described variously as the Indemnity Agreement or as the Product Liability Agreement of 1975. That Agreement, set out in full as Appendix A to this memorandum, provides for Fiat Allis to "defend, indemnify, and hold ... Allis Chalmers harmless from all Product Liability [arising from construction machinery manufactured] prior to January 4, 1974...." Paragraphs 1, 2, 3. In Paragraph 6 of the Agreement, Fiat Allis agrees that it "shall assume the entire control of the defense, compromise or settlement, including at its own expense employ-

ment of counsel." *See also* Plaintiff's Exhibit "4", Interrogatory no. 5. Plaintiff contends that this language transfers liability directly to Fiat Allis, while defendants argue that the Agreement requires only the indemnification of Allis Chalmers. Defendants assert that because the claims against Allis Chalmers were discharged in bankruptcy, their duty to indemnify must also be extinguished.[4]

In construing the 1975 Agreement, the initial question to be addressed is the choice of law. The defendants ignore the question, while the plaintiff implicitly argues for application of Pennsylvania law. The 1975 Agreement contains no choice of law agreement, and the 1973 Joint Venture Agreement, Article 22, which specifies arbitration for dispute resolution, is unhelpful. In the absence of any information of record regarding the place of signing of the contract or the intent of the signatories, the 1975 Agreement may properly be construed according to Pennsylvania law, since the claim by plaintiff in this forum more directly implicates Pennsylvania's products liability law than general laws of contract interpretation. *See Kessinger v. Grefco, Inc.*, 875 F.2d 153, 155 (7th Cir.1989).

It is indisputable that under Pennsylvania law an agreement which contains assumption of defense and indemnification clauses like those in the 1975 Agreement governs the assignment of liability between the contracting parties, *Pennsylvania Engineering Corporation v. McGraw–Edison Co.*, 500 Pa. 605, 459 A.2d 329 (1983), and is conclusive of Fiat Allis' duty to indemnify Allis Chalmers. It is further indisputable that when an agreement provides for the assumption of "all debts, obligations and liabilities," it also transfers direct responsibility for contingent product liability claims

---

**4.** Plaintiff additionally argues that Fiat Allis has admitted that it assumed successor liability for this claim in its answer to Interrogatory no. 50. That interrogatory asks:

Assuming that plaintiff will prevail, does this defendant [defined in plaintiff's interrogatory preface as either Allis Chalmers or Fiat Allis] have any policy(ies) of insurance ...?

Answer: Self insured retention $250,000 Holland–American Ins. Co. $1,000,000 in addition

to [retention] In addition, Fiat Allis has excess coverage ...

Plaintiff completely misconstrues the answer to the interrogatory, and even mischaracterizes his own question. A response that if either defendant is found liable it holds insurance in no way admits the scope of successor liability, any more than it admits liability generally.

unless they are expressly excluded. *Grugan v. BBC Brown Boveri, Inc.*, 729 F.Supp. 1080 (E.D.Pa.1990) (Van Antwerpen, J.) (quoting *Philadelphia Electric Co. v. Hercules, Inc.*, 762 F.2d at 309).

However, contrary to plaintiff's contention, these two propositions do not lead to the conclusion that an agreement to indemnify transfers liability for his cause of action based on Allis Chalmers' design and manufacture of the bulldozer, because under Pennsylvania law "the cause of action owned by the plaintiff is distinct from the cause of action arising out of the duty ... to indemnify." *Philadelphia Electric Co. v. Hercules, Inc.*, 762 F.2d at 309 n. 3, quoting *Carlin v. Pennsylvania Power & Light Co.*, 363 Pa. 543, 545, 70 A.2d 349, 351 (1950); *Grugan v. BBC Brown Boveri, Inc.*, 729 F.Supp. at 1091, quoting *Husak v. Berkel, Inc.*, 234 Pa.Super. 452, 462, 341 A.2d 174, 149 (1975) (*quoting Carlin*). The question at issue herein is precisely whether assumption of defense and indemnification agreements are sufficient to transfer liability to a third party from the indemnitee to indemnitor.

In *Bouton v. Litton Industries, Inc.*, 423 F.2d 643 (3d Cir.1970), this Circuit, applying New York law, construed contract language providing that Litton "assumes and agrees to pay or discharge" liability of a predecessor to be an assumption of that liability and not a contract to indemnify after judgment. 423 F.2d at 651. In *Bippus v. Norton Co.*, 437 F.Supp. 104 (E.D.Pa.1977), the district court followed *Bouton* in interpreting, under Pennsylvania law, contract language in which Dresser Industries agreed to "assume and agree to pay, perform and discharge all liabilities and obligations" as assuming liability for products liability claims. In *Philadelphia Electric Co. v. Hercules, Inc.*, an agreement calling for "assumption ... of all the debts, obligations and liabilities," was held to have assumed all environmental liabilities of the transferor corporation not specifically excluded.

The Third Circuit compared the broad language by which Hercules, Inc. assumed liability to several cases in which liability had been held excluded. 762 F.2d at 310. In each of those cases, liability was "assumed" subject to exclusions. So also in *Kessinger v. Grefco, Inc.*, 875 F.2d at 155, applying Pennsylvania law, a sale agreement by which Grefco's parent corporation assumed and agreed "to pay ... all debts, obligations, contracts, and liabilities," was held to transfer liability for inchoate products liability claims. Finally, in *Grugan v. BBC Brown Boveri*, the crucial language resulting in a holding that the successor had assumed products liability claims was "the assumption ... of all of the liabilities and obligations" of the predecessor. 729 F.Supp. at 1081.

By contrast, it has been held that an agreement merely requiring indemnity does not suffice to transfer liability. *See Reed v. Armstrong Cork Co.*, 577 F.Supp. 246, 251 (E.D.Ark.1983). Under Pennsylvania law, the duty to indemnify arises only after the indemnitee is obligated to pay money to a third party. *See e.g. F.I. Schindler Equipment Corp. v. The Raymond Co.*, 274 Pa.Super. 530, 418 A.2d 533, 534 (1980). Holding that an agreement which obligated Fiat Allis to indemnify Allis Chalmers actually operated in the same manner as a direct action statute would unduly strain the language of a contract which was drafted to govern intercorporate relationships, not to create third party beneficiaries. *See generally, Galecor, Inc. v. Institute of London Underwriters*, 729 F.Supp. 1101 (E.D.Pa.1990) (claimant cannot evade direct action statute to sue insurer of bankrupt) (New York law).[5]

It remains to be considered whether Fiat Allis accepted liability under the indemnity Agreement because it has assumed the de-

---

5. Plaintiff cites *Shorb v. Airco, Inc.*, 644 F.Supp. 923 (E.D.1986), in which Judge Lord suggested that one corporation had assumed another corporation's liabilities by an agreement "to indemnify and hold harmless." Judge Lord's choice of phrasing fails to support plaintiff's claim, however, because in *Shorb* the indemnity agreement was construed not to provide coverage for the claims asserted by the alleged indemnitee, and so Judge Lord's remarks can only be construed as dictum.

fense of product liability claims against Allis Chalmers, and by purchasing indemnity insurance for those product liability claims. Plaintiff's Exhibit "3", Interrogatory no. 5 and no. 3.14, 3.28, 3.29, 3.31, and 3.32. *See Langer v. Monarch Life Ins. Co.*, 879 F.2d 75, 81 (3d Cir.1989) (course of performance is always relevant in interpreting a writing). Although the purchasing of insurance on behalf of another entity does not suffice to assume liability for the insured peril, *LaFountain, supra*, 951 F.2d at 548, Fiat Allis' conduct does raise a question as to the interpretation of Article 4, Section 4.4 of the Joint Venture Agreement. The strongest support for plaintiff's contention that Fiat Allis assumed Allis Chalmers' future products liability comes in Article 4, Section 4.4, which provides in pertinent part:

> Where facilities are to be contributed by the parties, such contributions shall include *all* assets, rights and *obligations to the extent that they relate to the activity carried out* by facility in question. (emphasis added)

Use of the term "obligation" normally connotes a presently existing duty, particularly a contractual one, or debt, and is distinguished from the more general term, liability, used throughout the Agreement. It may be, however, that Fiat Allis purchased the insurance for claims made against defendant Allis Chalmers because the parties considered "obligations" related to the Springfield plant to include products liability claims for the HD–21. Defendant provides no evidence on this point, and it cannot be said as a matter of law that such a construction would be unreasonable. *Florom v. Elliott Mfg.*, 867 F.2d 570, 576, rehearing denied, 879 F.2d 801 (10th Cir. 1989); *Bouton*, 423 F.2d at 652. Summary judgment must therefore be denied on this cause of action.

## APPENDIX A

### AGREEMENT

Allis-Chalmers Corporation ("Allis-Chalmers"), a Delaware corporation, and Fiat S.p.A. ("Fiat"), an Italian corporation, and Fiat-Allis, Inc., a Delaware corporation, and Fiat-Allis B.V., a Netherlands corporation (both referred to hereinafter collectively as "Fiat-Allis"), on the basis of the respective considerations contained herein, hereby agree to allocate responsibility for Product Liability (herein defined as any action, suit or proceeding or any claim, demand or assessment asserting bodily injury or property damage, and any costs, charges or expenses arising in the establishment by Fiat or Allis-Chalmers of the rights provided herein) arising out of or connected with Construction Machinery as follows:

1. Fiat-Allis shall defend, indemnify and hold Fiat and Allis-Chalmers harmless from all Product Liability which arises out of or is connected with Construction Machinery manufactured by the Joint Venture, or any entity in the Joint Venture, on or after January 4, 1974.

2. Fiat-Allis shall defend, indemnify and hold Fiat and Allis-Chalmers harmless from all Product Liability (a) which arises out of or is connected with any Existing Construction Machinery (herein defined as all Construction Machinery models listed in Exhibit A attached hereto, which is taken from the "Existing Models" section of Schedule 3 Part A to the Joint Venture Agreement, and all series, horsepower and versions thereof, together with all attachments or equipment sold in connection therewith) manufactured by Fiat or Allis-Chalmers, or any of their subsidiaries, prior to January 4, 1974, and (b) which is asserted in litigation commenced on or after January 1, 1976.

- 1 -

EXHIBIT 1.
to Plaintiff's 3rd Request
for Production of Documents

**492**

3. Fiat-Allis shall defend, indemnify and hold Fiat and Allis-Chalmers harmless from all Product Liability (a) which arises out of or is connected with any Non-Current' Construction Machinery (herein defined as all Construction Machinery discontinued prior to January 4, 1974 and not included within *the definition of Existing Construction Machinery*) manufactured by Fiat or Allis-Chalmers, or any of their subsidiaries, prior to January 4, 1974, and (b) which is asserted in litigation commenced on or after January 1, 1979; provided, however, that such Product Liability does not arise out of and is not connected with a defect which has or would have been corrected by a modification for which Fiat-Allis previously requested reimbursement in accordance with paragraph 4 below and for which Fiat or Allis-Chalmers, as the case may be, has failed to commit itself to make such reimbursement within 30 days after receipt of such request.

4. In the event that product safety requirements make it necessary for Fiat-Allis to modify any Non-Current Construction Machinery, and provided Fiat-Allis will modify its Existing Construction Machinery in similar fashion to the extent that such requirements are applicable to Existing Construction Machinery, Fiat-Allis may notify Fiat or Allis-Chalmers, as the case may be, as follows:

(a) nature of the modification,

(b) number of machines covered,

(c) approximate aggregate cost of the modification, and

(d) proposed procedure and timing for the modification,

and may request reimbursement of —*50%*— of the costs of such modifications ~~up to an annual maximum reimbursement from Fiat or~~

- 2 -

Allis-Chalmers, as the case may be, for all such modifications of $ _____ .
Fiat or Allis-Chalmers, as the case may be, will advise whether it will provide such reimbursement.

5. For all *Product Liability* cases on which Fiat and Allis-Chalmers retain responsibility for defense prior to such times as Fiat-Allis is required to assume the responsibility for such cases in accordance with paragraphs 1, 2 and 3 hereof, Fiat-Allis shall make available its records and its personnel and otherwise cooperate fully in such defense, without charge, as requested by Fiat or Allis-Chalmers, as the case may be, to assist in the defense of such cases.

6. If any action, suit or proceeding shall be commenced, or any claim, demand or assessment be asserted, against Fiat or Allis-Chalmers, for which Fiat-Allis has responsibility under paragraphs 1, 2 or 3 above and in respect of which Fiat or Allis-Chalmers proposes to demand indemnification, Fiat-Allis shall be notified promptly and shall assume the entire control of the defense, compromise or settlement thereof, including at its own expense employment of counsel, and, in connection therewith, Fiat and Allis-Chalmers shall, WITHOUT CHARGE, cooperate fully in such defense and make available to Fiat-Allis all pertinent information under their respective control.

7. No claim for reimbursement shall be submitted for Product Liability that does not exceed U.S.$1,000.

8. At the request of Fiat-Allis, the accuracy of the amount of any claim for indemnification shall be confirmed, where appropriate, by the independent firm of public accountants of whichever of Fiat or Allis-Chalmers makes the claim for indemnification.

- 3 -

494

9. In resolving any dispute between Fiat-Allis and either Fiat or Allis-Chalmers as to the date of manufacture, the manufacturing records of the facility concerned, when certified as accurate by an officer of the Joint Venture entity which owns that facility, shall be prima facie evidence of the date of manufacture of the Construction Machinery in question.

10. Capitalized terms used herein shall have the same meanings as those terms have in the Joint Venture.

IN WITNESS WHEREOF, the parties have executed this Agreement this _13TH_ day of _December_, 1975.

FIAT S.p.A.

By _____

ALLIS-CHALMERS CORPORATION,

By _____

FIAT-ALLIS B.V.

By _____

FIAT-ALLIS, INC.

By _____